Elizabeth P. SHAFFER, William W. Shaffer, Daniel Everett Brangard, Audra Virginia Engle, Gary N. Cottrell, Susan Rae Moore, minors by their guardians Betty J. SHAFFER, Wanda R. Bangard, Pauline V. Layhew, Dolores Cottrell and Diana J. Moore, and in their own right, Plaintiffs,

v.

BOARD OF SCHOOL DIRECTORS OF the ALBERT GALLATIN AREA SCHOOL DISTRICT, Dorsey Clegg, Theodore Yanowski, Sarah Bartuch, Elroy Enlow, Charles King, John A. Kupas, Jr., George E. Lilley, Theodore C. Shaffer, Frank Sterle, individually and in their capacity as members of the Board of School Directors of the Albert Gallatin Area School District, Fayette County, Pa., and Michael E. Tippett, individually and in his capacity as Superintendent of the Albert Gallatin Area School District, Defendants.

Civ. A. No. 80–1115.

United States District Court,
W.D. Pennsylvania,
Civil Division.

Sept. 16, 1983.

Robert M. Brenner, Southwestern Pa. Legal Aid Soc., Uniontown, Pa., for plaintiffs.

Gerald R. Solomon, Uniontown, Pa., for defendants.

Michael I. Levin, Mary D. France, Cleckner & Fearen, Harrisburg, Pa., amicus curiae, Pa. School Boards Ass'n, in support of defendant.

## OPINION

SIMMONS, District Judge.

### A. BACKGROUND

On August 7, 1980, several concerned parents with kindergarten-age school children filed this class action complaint assailing a decision by the Board of Directors of the Albert Gallatin Area School District (hereinafter School District) to provide free transportation to kindergarten-age school children on only a one-way basis, either to or from school, but not both to and from school. Although Pennsylvania law does not mandate that a School District establish a kindergarten, the School District provides kindergarten classes for all eligible children residing within the district.

The School District established kindergarten classes at four public schools. Like other elementary classes, kindergarten classes are held daily, with a morning and afternoon session. However, kindergarten children, unlike other elementary children, attend only one session, either the morning or the afternoon session. Usually, the

School District provides round-trip transportation to all elementary school children who attend the four public schools. To avoid the expense of engaging additional buses and drivers especially for the kindergarten pupils during the middle of the day, however, the School District decided to transport kindergarten children only on the regular elementary school buses to school for the morning session or to transport them home on the elementary school buses at the end of the day. Hence, parents were left to their own resources to transport their children either to or from school during the middle of the day.

Parents on public assistance who could not otherwise afford transportation for their kindergarten-age children filed this class action suit because the School District's decision effectively precluded their children from attending kindergarten classes. The indigent parents' complaint, as amended, alleged that the School District's action violated the due process and equal protection clauses of the United States Constitution; in addition, it raised several state law questions.

This Court certified a class consisting of all kindergarten-age children and their parents, past, present, and future, who resided within the Albert Gallatin Area School District and who could not afford transportation for their school-age children either to or from school. Without reaching the plaintiffs' state law claims, this Court ruled that the School District's action was unlawful under the federal constitution and entered a permanent injunction against the School District ordering it to provide free transportation to all eligible children residing in the school district, commencing with the 1981–82 school year and continuing as long as kindergarten is offered by the School District.

Applying a lesser standard of constitutional review on appeal, the Court of Appeals ruled that the School District's decision violated neither the due process nor the equal protection clauses of the fourteenth amendment. Because this Court did not rule on the plaintiffs' state law claims the Court of Appeals remanded the state law questions for this Court's discretionary determination. This Court will exercise its discretionary jurisdiction to hear the plaintiffs' state law claims.

## B. FINDINGS OF FACT

This Court having heard arguments for and against the merits of a permanent injunction and having considered in favor of the plaintiffs the briefs and arguments of both parties and being duly advised makes the following finding of facts:

1. This matter was remanded to this Court by the Court of Appeals for a discretionary determination on whether to retain jurisdiction over the remaining state law claims.

2. Failure to retain jurisdiction will result in inconvenience, undue delay, additional expense, loss of judicial economy of effort and will otherwise unfairly prejudice the plaintiffs.

3. Under Pennsylvania law the defendant School District has established kindergarten for all eligible school-age children in the school district.

4. Plaintiffs represent the class of all past, present, and future kindergarten-age children and the parents of said children who would otherwise be eligible under state law for free transportation and who cannot provide the necessary transportation for their children to and from kindergarten, pursuant to Federal Rules of Civil Procedure 23(a), (b)(1) and (b)(2), as stipulated to by the parties; the defendants have failed to act on grounds generally applicable to this class.

5. Diana Moore, who is a member of the class of plaintiffs, has an income of $760 per month for a family of 5, which is less than or equals the family's expenses for the necessities of life, and has no income remaining to provide for the transportation of her son to kindergarten.

6. Sandra Verbus, who is a member of the class of plaintiffs, has an income of $250 per month for a family of 8, which is less than or equals the family's expenses for the

necessities of life, and has no income remaining to provide for the transportation of her son and daughter to kindergarten.

7. Diana Moore and Sandra Verbus, and their families live approximately six miles from the school building where their children would attend kindergarten, and their children would not be able to walk to the school throughout the school year without endangering their health, safety and welfare.

8. As a result of the School District's refusal to provide round-trip transportation for kindergarten students, the named and unnamed plaintiffs have been and shall be effectively precluded from attending kindergarten because these indigent parents cannot provide an alternative means of transportation.

9. Children who have had kindergarten need less special education, participate in fewer remedial classes, continue in school longer, perform better on achievement tests and generally progress more rapidly than those who have not had kindergarten.

10. The kindergarten experience involves the use of many and varied teaching aids including games, puzzles, blocks, clay, crayons, records, and cassettes which named and unnamed plaintiffs cannot financially afford to provide for their children at home.

11. Children who are able to attend kindergarten have a definite advantage over those members of the plaintiff class who, because of financial inability, are unable to attend kindergarten.

## C.  CONCLUSIONS OF LAW

1. The Court concludes that retention of jurisdiction over this matter is necessary to avert undue prejudice to the plaintiffs and for reasons of judicial economy.

2. Transportation for kindergarten children, when provided by the School District, must be provided to each child both to and from their respective school.

3. The Court concludes that it was the intent of the state legislature that "transportation" for public school students, if provided at all, should be provided on a round-trip basis. "Transportation for public school children" is not in fact "transportation," as was intended by the General Assembly of Pennsylvania, unless and until "two-way" or "round-trip" transportation is afforded to all children.

4. In adopting section 1361 of the Public School Code of 1949, the Pennsylvania state legislature contemplated that only two-way or round-trip transportation would be provided for public school children, if in fact any transportation is to be afforded.

5. The School District's scheme of providing only one-way transportation to kindergarten-age school children is invalid as a violation of the explicit language of the state statute regulating free transportation to school children.

6. Equitable relief in the form of an injunction is the only adequate remedy that will preserve the rights of the plaintiffs to round-trip transportation under these factual circumstances.

7. If the School District in the exercise of its discretion provides "transportation" to its kindergarten children, said transportation is not transportation as envisaged by the state legislature, unless it is round-trip transportation.

## D.  DISCUSSION

### 1.  UNDOUBTEDLY, THIS DISTRICT COURT HAS JURISDICTION TO HEAR AND DECIDE THIS PENDANT MATTER

In this case, the plaintiffs' amended complaint alleged as violation of the due process and equal protection clauses of the United States Constitution and the Pennsylvania Public School Code of 1949, a decision by the School Board of Albert Gallatin Area School District to provide free transportation to kindergarten-age children on only a one-way basis, either to or from school. It is obvious that the claims arising under the Pennsylvania statute have the same common nucleus of operative facts as the plaintiffs' federal claim. The plaintiffs' complaint presents a "case where two dis-

tinct grounds ... support ... a single cause of action ..., only one of which presents a federal question." *United Mine Workers v. Gibbs,* 383 U.S. 715, 722, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966). Clearly, this is a case where the federal district court may permissibly exercise judicial power over a pendant state claim.

■ Subject matter jurisdiction over pendant state law claims lies in a federal district court, in the sense of judicial power, if the federal claim alleged is substantial. *Id.* Following *Gibbs,* courts have taken an expansive view of substantiality of a federal claim. Thus, federal claims are "constitutionally insubstantial only if prior decisions inescapably render the claims frivolous; previous decisions which render claims of doubtful or questionable merits do not render them insubstantial ...." *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973). *Cf. Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

In this case it is claimed that the unlawful actions of the Defendant School District denies the plaintiff class their right to a kindergarten education. The mere statement of the plaintiffs' position indicates clearly that it is a claim of substance and certainly it cannot be defined in any way as frivolous. Additionally, it should be noted that the Court of Appeals in addressing the federal claim filed by these plaintiffs and based on this very same factual background has held that the plaintiffs' original complaint in this matter alleged a substantial and colorable federal constitutional claim. *See Shaffer v. Bd. of School Directors,* 687 F.2d 718, 722 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 1209, 75 L.Ed.2d 449 (1982). *See also Mitchell v. Hendricks,* 68 F.R.D. 569 (E.D.Pa.1975).

Dismissal of the pendant claim in this case would run afoul of the Supreme Court's admonition in *Gibbs* that pendant jurisdiction serve the ends of "judicial economy, convenience and fairness to litigants." *Gibbs, supra* 383 U.S. at 726, 86 S.Ct. at 1139. These factors weigh decisively in favor of retaining jurisdiction.

Judicial economy and convenience is best served if this Court decides the state law question. The pendant state claim may be resolved upon the evidence previously adduced at hearings before this court thereby avoiding the necessary consequence of retrial in a state court. Weighing the amount of judicial time and energy already invested against the amount of additional time and energy necessary for the resolution of this case in a new forum, it would be unjust to conclude otherwise. Moreover, the purpose of the doctrine is to "protect the plaintiff against the necessity to shuttle back and forth between federal and state courts ...." 3A *Moore's Federal Practice* ¶ 18.-07[1.–5] n. 11 (2d ed. 1982).

In addition, as the Court of Appeals noted, because the school year is imminent, retrial in a new forum would unfairly prejudice the plaintiffs. At this stage in the litigation, retrial would entail substantial delay in the ultimate resolution of this case. Such delay may result in the irretrievable loss of access to a kindergarten education for members of the plaintiff class. Once denied, this interest in kindergarten education can never be retroactively restored. Under these circumstances, justice delayed is certainly justice denied. Relitigation of issues disposed of squanders limited judicial resources. By this Court retaining jurisdiction, the burdens of retrial are spared to the parties, the opportunity is granted to other litigants waiting their turn before overburdened courts, and taxes which support the Court system are conserved for better use.

2. THE PENNSYLVANIA PUBLIC SCHOOL CODE REQUIRES THAT DEFENDANT SCHOOL DISTRICT PROVIDE ROUND TRIP TRANSPORTATION "TO AND FROM" SCHOOL IN THE EVENT IT ELECTS TO PROVIDE ANY TRANSPORTATION OF ANY KIND TO ITS KINDERGARTEN PUPILS

This Court is called upon to construe a provision of the Pennsylvania Public School Code of 1949, which provides, in pertinent part:

The board of school directors in any school district *may,* out of the funds of the district, provide for free transportation of any resident pupil *to and from* the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance of not more than ten miles by the nearest public highway . . . .

Act of December 29, 1972, P.L. 1726 No. 372, amending § 1361 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, Art. XIII, *as amended* at 24 P.S. § 13–1361 (1983–84 supp.) (hereinafter cited as Act 372) (emphasis added).

■ The plain language of the statute gives the Defendant School District the discretion to provide free transportation "to and from the kindergarten . . .", not just to the kindergarten only, or from the kindergarten only. It is obvious that the purpose of round trip transportation, which is to protect the health, welfare and safety of the children, would be clearly defeated if kindergarten children of very tender years were bused one way five and six miles from their homes to school and were left there by the Defendant School District with no publicly afforded way to return home.

There can be no doubt that the Defendant School District would defeat the purpose of section 1361 of the School Code, as amended, if it were to be permitted to offer only one way transportation to the plaintiff kindergarten children in this case.

The Pennsylvania Supreme Court has repeatedly construed relevant provisions of the Public School Code of 1949, specifically section 1361. In 1967, prior to Act 372, the Pennsylvania Supreme Court, in *Rhoades v. School District of Abington Township,* 424 Pa. 202, 226 A.2d 53, *appeal dismissed,* 389 U.S. 11, 88 S.Ct. 61, 19 L.Ed.2d 7, *cert. denied, Worrell v. Matters,* 389 U.S. 846, 88 S.Ct. 36, 19 L.Ed.2d 114 (1967), upheld Act 91 against state and federal constitutional challenges that the Act violated the separation of church and state doctrine. [Act 91 amended section 1361 of the Public School Code of 1949 to permit pupils attending nonpublic schools to be transported by public schools buses *to and from* their schools if such schools were along the "established routes" of the public school buses. (Underlining supplied) ]

In *Rhoades* the Pennsylvania Supreme Court expressly declared that "[t]he purpose of Act 91 . . . is to provide for the 'health, welfare and safety of the children of the Commonwealth.' The phrase 'health, welfare and safety' is not to be treated lightly or as superfluity. The legislature cannot be deemed to intend that its language be superfluous and without import.' " *Id.* at 56. (citation omitted).

To bolster this proposition the *Rhoades* court cited United States Senate Committee testimony concerning increasing violence to foot travelers because of the volume of motor traffic and the number of highway collisions occurring in this country, concluding that:

[i]n view of the peril hovering over our streets and roads like a miasmatic fog, those charged with concern for the safety of children are duty bound to devise methods and means for saving the little travelers from harm on their way to and from school. Obviously the manner in which to provide these youthful wayfarers with a fair measure of protection against highway mishap is to keep them pedally off the roads and to transport them in vehicles so formidably constructed that they may ward off and parry, to the maximum extent possible, aggression from other vehicles. The school bus, with its large heavy wheels and steel fabricated body seems to be the answer to the worrisome problem. Pennsylvania's Secretary of Public Welfare, in testifying on House Bill 381 (later to become Act 91) before the Senate Education Committee, said: " . . . school bus transportation clearly involves the safety and health of our children. The busing of school children is for their protection against hazards of the roadways and of traffic, against dangers occasioned by exposure

to weather, against evils of child molestation."

*Rhoades, supra* at 57.

Following *Rhoades,* in 1972, Act 372 further amended section 1361 of the Public School Code of 1949 by eliminating the "established routes" restriction thereby permitting nonpublic and public school children to be bused to and from their respective schools up to ten miles outside the school district's boundaries. Again, section 1361 was challenged on the grounds that Act 372 violated the separation of church and state doctrine. *Springfield School District v. Department of Education,* 483 Pa. 539, 397 A.2d 1154 (1979). Once again, the Pennsylvania Supreme Court noted that:

Act 372 [amending § 1361] was the product of legislative concern for the welfare of school children traveling between home and school. [Its purposes are to protect] the child against the hazards of traffic, the exposure to inclement weather and the designs of persons who would harm them.... Providing bus transportation is obviously an appropriate means to accomplish these purposes.

*Springfield, supra* at 1160. To be sure, the court reaffirmed its findings in *Rhoades,* noting that Act 372 did not in any way alter the legislative purpose of section 1361.

Additionally the Pennsylvania statutes relating to public transportation of school students require that transportation, where provided, be adequate to meet the needs of the pupils transported. Section 1362 of the Public School Code, the section immediately following section 1361 which mandates "*to and from*" busing, sets forth with specificity the type and degree of transportation that a School District must provide, once it has decided to provide transportation. After the District has exercised its discretion to provide transportation, section 1362 provides that:

[t]he free transportation of pupils, as required or authorized by this act, or any other act, may be furnished by using either school conveyances, private conveyances or electric railways, or other common carriers, when the total distance which any student must travel by the public highway to or from school, in addition to such transportation, does not exceed one and one half (1½) miles, and when stations or other proper shelters are provided for the use of such pupils where needed, and when the highway, road, or traffic conditions are not such that walking constitutes a hazard to the safety of the child as so certified by the Department of Transportation.

Public School Code of 1949, 24 P.S. § 13–1362 (1983–84 Supp.).

This statute is clearly designed to insure that transportation, when provided, is safe and adequate to meet the needs of pupils traversing substantial distances to and from school, that adequate shelter while awaiting buses is provided, and that hazardous conditions are avoided. In a somewhat analogous case, a Pennsylvania court has specifically defined the parameters of a School District's responsibility to provide "adequate transportation." *See Pollock v. Northern Potter Joint School Board,* 9 Pa.D. & C.3d 31 (1976). In *Pollock,* the court, interpreting section 1331 of the Public School Code, noted that:

[sections 1362 and 1331] must be considered [together] as defining the responsibility of school officials and school boards in providing transportation to school pupils. Integrated they provide, in essence, that where there is no public school within two miles by public road from a pupil's residence, proper, free transportation shall be provided by the school district to the pupil and that such proper transportation cannot require the pupil to travel more than one and one half mile on a public road to the transportation pick-up station. The one and one-half mile limit is also qualified by the condition that proper shelter be provided "where needed" and walking conditions constituting a hazard to safety of the pupil do not exist, the existence of such hazard to be determined by the Bureau of Traffic Safety.

*Id.* at 35–36.

These transportation statutes mandate that where transportation is provided, it

must be provided in such a safe and effective manner so as to meet the needs of pupils who require transportation. In view of the legislative purpose of section 1361 of the Public School Code of 1949, as discussed above, this Court holds that once the School District has decided to furnish transportation to its kindergarten pupils, the decision to provide free transportation on only a one-way basis is clearly contrary to the statutory provisions of the Public School Code as contemplated by the Pennsylvania State Legislature.

As noted earlier, section 1361 provides that the board *may* provide for the free transportation of any resident pupil *to and from* school. The District argues, and it is conceded, that the discretion to provide transportation is lodged solely in the School District. In fact, the Pennsylvania Supreme Court has held that section 1361 grants plenary power to the School District. *Roberts v. Board of Directors of School District of Scranton,* 462 Pa. 464, 341 A.2d 475, 479 (1975). The District would have us to believe that its discretionary power under section 1361 and as interpreted by the Pennsylvania Supreme Court is without limits. Official discretion, however, is never without limits. The authority granted the School District under section 1361 merely provides that in its discretion, the District is not required to provide free bus transportation at all to any pupil. However, once the District elects to furnish transportation, it must furnish effective and safe transportation to its pupils. This Court holds that one-way transportation for children of such tender years is neither safe nor effective transportation, as contemplated by the legislation authorizing the use of busing in a school district.

While section 1361 provides the School District with discretion regarding whether transportation is to be provided for kindergarten students, once that decision is reached, the free transportation provided must be both to and from kindergarten. State decisions interpreting section 1361 provide no support for the School District's reading of section 1361 as granting the School District the authority to provide only

one-way transportation in the manner provided herein. In *Roberts v. School District of Scranton,* 462 Pa. 464, 341 A.2d 475 (1975), the Pennsylvania Supreme Court interpreted section 1361 as requiring the School District, where it decides to provide transportation, to provide transportation to public and non-public students alike. A similar conclusion was reached by the Court against assertions that transportation to non-public students violated the First Amendment. *See Springfield v. Department of Education,* 483 Pa. 539, 397 A.2d 1154, *appeal dismissed,* 443 U.S. 901, 99 S.Ct. 3091, 61 L.Ed.2d 869 (1979); *Rhoades v. Abington Township School District,* 424 Pa. 202, 226 A.2d 53, *cert. denied,* 389 U.S. 846, 88 S.Ct. 36, 19 L.Ed.2d 114, *appeal dismissed,* 389 U.S. 11, 88 S.Ct. 61, 19 L.Ed.2d 7 (1967).

Additionally, the School District cites an opinion of a former Commonwealth Attorney General as support for their proposition that section 1361 could be interpreted to permit the School District to provide only one-way transportation. *See* Op.Att'y.Gen. No. 56, *reprinted in* 4 *Pa Bulletin,* 223 (1974). The opinion of the state Attorney General is without any judicial weight in determination of the issues before this Court. Indeed, such opinion possesses no legal authority even in a state court proceeding; it has no binding effect except on the state officer to whom it is addressed. Such opinions are solely to advise a state entity who might request clarification of the state's position. Nor does the Attorney General's opinion alter or illuminate the legislative intent of the statute. In this case, rendered twenty-five years after the enactment of the Public School Code, the Attorney General's opinion merely reflects the personal assessment of an office-holder upon inquiry by a governmental agency. In this regard, the opinion has no persuasive or binding effect.

There appearing to be no legislative authority, either expressly or by necessary implication, supporting the School District's busing scheme, this Court is compelled to conclude that the School District's decision to provide only one-way transportation for

the plaintiffs' kindergarten-age school children exceeded the limits of its discretion as provided in the Public School Code of 1949. This conclusion is buttressed by the legislative purpose of section 1361. As noted earlier, section 1361 was enacted with an eye toward the health, welfare and safety of the school children of the Commonwealth. Although section 1361 has been repeatedly amended, the Pennsylvania Supreme Court has been steadfast in its conclusion that the primary purpose of section 1361 is for the protection of school-age children from the hazards of the roadways and of traffic. At this late date, it would be inimical to the purpose of the Act to hold that the legislature contemplated providing only one-way transportation to school children of such tender years.

### 3. INJUNCTIVE RELIEF IS REQUIRED IN THIS CASE

Federal courts have the broad equitable powers necessary to form effective remedies. *Hill v. Gautreaux,* 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976). "Once a right and violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Board of Education,* 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). Moreover, discretion is lodged in federal courts to mold orders to fit the circumstances of a particular case and to enjoin unlawful acts which can be anticipated from a defendant's past wrongful conduct. *See, e.g., United States v. Spectro Foods Corp.,* 544 F.2d 1175 (3d Cir. 1976). For the reasons discussed below and to prevent ongoing and irreparable harm to the plaintiffs this Court hereby permanently enjoins the School District from providing only one-way transportation to kindergarten-age school children attending the kindergarten program in the school district.

### 4. THERE WILL BE IRREPARABLE HARM SUFFERED BY THE PLAINTIFFS IN THE ABSENCE OF INJUNCTIVE RELIEF

It is clear from the testimony adduced at the evidentiary hearings that the School District's failure to provide round-trip or two-way transportation to kindergarten-age school children effectively denies the plaintiffs safe and adequate access to kindergarten education. As noted above, the Public School Code requires that transportation, where provided, be safe and adequate to meet the needs of pupils.

Additionally, the testimony revealed that preclusion from the kindergarten program would cause substantial and deleterious harm to the plaintiffs. According to expert testimony, children who are denied a kindergarten education fail to establish the basic "building blocks" upon which the rest of a child's education is predicated. *See* Transcript of Hearing, 94–95, June 3, 1981. The School District did not controvert the expert's testimony regarding the crucial value of a kindergarten education. Indeed, the School District's Superintendent agreed, testifying that kindergarten education provides the "basic skills" for the educational experience, skills which he hopes his own child will obtain from forth-coming enrollment and participation in kindergarten. *See* Transcript of Hearing, 41–44, May 18, 1983.

The negative consequences resulting from the denial of a kindergarten education are clear in the record. The expert testified, and experience indicates, that remedial classes and repeated grades are the proximate result of such a denial. *See* Transcript of Hearing, 115, June 3, 1981; 15, May 18, 1983. In sum, a child who is denied the kindergarten experience and the basic skills therein provided is irreparably harmed and denied the opportunity to effectively reach the full extent of his or her capacity throughout the educational process; once lost, this opportunity can never be retroactively restored.

### 5. THERE IS NO REMEDY AT LAW

There are no federal or state statutes specifying damages or an appropriate relief at law. In this case, the School District's busing scheme precludes the plaintiffs from

attending kindergarten. The plaintiffs are therefore denied the opportunity to develop the basic skills provided through a kindergarten education. In consequence, the plaintiffs do not possess the initial educational concepts upon which the additional levels of education are built; the plaintiffs are perpetually lagging behind their classmates who have had the opportunity to attend kindergarten; and, the plaintiffs lack the social development and benefits of interaction with their peers and instructors at the fundamental stages of their development. Because of the nature of the plaintiffs injury, it has no pecuniary value; nor can it be compensated by monetary damages. For this reason, equitable relief in the form of an injunction is the only available remedy to prevent further injury to the plaintiffs.

## ORDER

AND NOW, this 16th day of September, 1983, based upon the findings of fact and conclusions of law contained in the accompanying opinion, and for the reasons previously set forth in the accompanying opinion, IT IS ORDERED that section 1361 of the Public School Code of 1949 is hereby interpreted as requiring the Defendant School District to provide two-way transportation, both to and from school, for all kindergarten-age school children otherwise eligible for bus transportation in the Defendant School District if the Defendant decides to furnish transportation for its kindergarten pupils.

IT IS FURTHER ORDERED AND DECREED that:

1. As herein certified, the plaintiffs represent the class of all past, present and future kindergarten-age school children and the parents of said children within the Albert Gallatin Area School District who cannot, for financial reasons, provide the necessary transportation for their children to or from kindergarten each regularly scheduled school day, as stipulated to by the parties pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(2).

2. It is ordered that the defendants are hereby permanently enjoined and restrained from failing to provide two-way transportation to all members of the plaintiff class, who are otherwise eligible for free transportation under state law, residing in the School District, to and from kindergarten beginning with the fall term of the 1983–84 school year, and continuing as long as any kindergarten transportation is provided to the children of the School District in the discretion of the Defendant Board of School Directors.

3. This order shall be implemented in the following manner:

a. The defendants shall be required to give effective notice of the availability of two-way busing transportation for kindergarten children to all families residing within the district with kindergarten-age children. Notice shall request and invite parents to contact the school district's administrative office by telephone or in person to make suitable arrangement for the transportation of kindergarten-age school children both to and from school. Notice shall be disseminated in the following manner:

(1) For a period of four consecutive weeks preceding the beginning of the 1983–84 school year or after the issuance of this order, whichever is later, notice shall be published weekly in the Uniontown Herald-Standard, the Morgantown Dominion Post, and the Masontown Sentinel.

(2) Concurrently with the four week period described in the foregoing paragraph of this order, said notice shall be broadcasted frequently each week on the radio stations WMBS, Uniontown; WQAR–FM, Uniontown; and WCLG, Morgantown.

b. The school district, commencing with the 1983–84 school year or the issuance of this order, whichever shall occur later, and continuing thereafter, shall make available two-way transportation, both to and from school, to all kindergarten-age school children, as otherwise required by state law, throughout each academic year

as long as kindergarten transportation is provided.

4. To insure compliance with this order, it is further ordered that plaintiffs' counsel shall be permitted to inspect the School District's files to determine whether notice was given in compliance with this order, said inspection to occur at a reasonable time and in a reasonable manner.

5. Jurisdiction is retained by this Court for the purpose of enabling either party to apply to the Court for such further orders and relief as may be necessary and appropriate to effectuate the goals of this order, for the modification or termination of any provision herein, and for the enforcement of compliance therewith and the imposition of sanctions for violations thereof.

6. The provisions of this order shall apply to the defendants, their agents, servant, employees, attorneys, successors and assigns and to all persons in active concert and participation with the defendants who receive actual notice of this final order by personal service or otherwise.