341 A.2d 475

Barbara ROBERTS et al., Appellants,

v.

**BOARD OF DIRECTORS OF the SCHOOL DISTRICT OF the CITY OF SCRANTON.**

Supreme Court of Pennsylvania.

Argued Jan. 14, 1975.

Decided July 7, 1975.

466

---

Richard S. Campagna, Scranton, for appellants.

James A. Kelly, Scranton, for appellee.

Before JONES, C. J., and O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Appellants were granted a mandatory preliminary injunction by the Court of Common Pleas of Lackawanna County which required the appellee to provide bus trans-

portation for the children of appellants who are in the seventh and eighth grades and who reside in the Oakmont area of the City of Scranton. These students had been bused to school for the past six or seven years on account of their classification as elementary students; but, because of the opening of the East Scranton Junior High School in the Fall of 1973, approximately sixty students from the Oakmont area were reassigned to the new Junior High School and reclassified as secondary students. The policy of the School Board as announced at a meeting on July 9, 1973, is to provide transportation for resident pupils in grades seven through nine attending elementary or secondary schools if no public transportation is available *and* the residence of the child is two or more miles from school, or for a lesser distance if a certified hazardous condition exists. The policy was against busing on the basis of hazard alone. Because the two and one-half mile route which the reclassified Oakmont students would have to traverse to and from the new Junior High School was certified as a hazardous traffic area by the Pennsylvania Department of Transportation and because the lower court felt that the School Board "may" have abused its discretion in choosing not to bus the Oakmont seventh and eighth graders, a decree issued requiring the Board to bus these children conditioned upon the entry of security by the appellants. On appeal to the Commonwealth Court, the decree was vacated on the grounds that the lower court had not found the requisite clear abuse of discretion and that the lower court failed to make a finding as to adequate alternative transportation facilities available to the Oakmont students. The Commonwealth Court remanded for a reconsideration of these deficiencies. *Board of Directors of the School District of the City of Scranton v. Roberts*, 13 Pa.Cmwlth. 464, 320 A.2d 141 (1974). We granted allocatur and hereby affirm the order of the Commonwealth Court.

■■ As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor. *Intraworld Industries, Inc. v. Girard Trust Bank*, 461 Pa. 343, 336 A.2d 316 (filed April 17, 1975); *Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp.*, 450 Pa. 367, 301 A.2d 816 (1973); *Zebra v. Pittsburgh School District*, 449 Pa. 432, 296 A.2d 748 (1972). "In order to sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted." *Zebra v. Pittsburgh School District,* 449 Pa. at 437, 296 A.2d at 750.

■■ A mandatory injunction which commands the performance of some positive act requires a much stronger case. We have often stated that a mandatory injunction which is imposed to preserve the status quo [1]

1. We disagree with the conclusion of the Commonwealth Court that the status quo in this instance was non-busing.
   " '[T]he status quo which will be preserved by preliminary injunction is the last actual, peaceable [and, may we add, lawful] non-contested status which preceded the pending controversy.'
   A preliminary injunction is to put and keep matters in the position in which they were before the improper conduct of the defendants commenced and to prevent them from gaining any advantage by their own wrongful acts. [Citations omitted].
   . . . [T]he court is not bound to preserve the status which it finds to exist at the moment the Chancellor gets his grasp of the case, but he is bound where the right is clear to restore 'the status' which existed immediately before the dispute arose." (Language in second set of brackets in original.) *Pennsylvania Public Utility Commission v. Israel,* 356 Pa. 400, 407–08, 52 A.2d 317, 321 (1947). Applying these principles to the facts at bar, it is clear that the last peaceable uncontested status was the busing of seventh and eighth graders from the Oakmont section. When the Board changed its policy by resolution on

should be issued only in rare cases and certainly more sparingly than one which is merely prohibitory. *Zebra v. Pittsburgh School District, supra; McMullan v. Wohlgemuth*, 444 Pa. 563, 281 A.2d 836 (1971). Thus, in order for a mandatory injunction to issue, it is essential that a clear right to relief in the plaintiff be established. The affirmative requirement of the injunction below to provide busing is properly styled as mandatory.

■■ Section 1361 of the School Code, Act of 1972, December 29, P.L. 1726, No. 372, § 1, 24 P.S. § 13–1361 (hereinafter Act 372), provides:

"The board of school directors in any school district *may*, out of the funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled . . .." (Emphasis added).

The power granted to school districts under this section is plenary, absent a showing of bad faith or abuse of discretion. The Act, as applied to a second class school district such as the City of Scranton, does not require a school district to provide any free transportation at all to any pupils. All that Act 372 does require is that, if the school board elects to provide busing, it must be provided to public and non-public school pupils alike.[2]

■ We are in full accord with the Commonwealth Court that the lower court opinion lacked a conclusive

July 9, 1973, the parents began to appeal to the Board to reinstate busing, even though the complaint was not filed until September 5, 1973.

2. This interpretation of Act 372 is consistent with the *Guidelines for Implementation of Act 372 of 1972 Affecting Pupil Transportation* issued on March 29, 1973, by the Commissioner of Basic Education of the Commonwealth of Pennsylvania.

finding as to abuse of discretion by the School Board. The lower court's opinion stated:

"We believe the evidence at this stage *may* warrant the conclusion that the Board's policy against busing was the product of an arbitrary will . . . ." (Emphasis added).

As the Commonwealth Court concluded:

"A conclusion by the lower court that the Board *may* have abused its discretion is an insufficient basis on which to grant a preliminary injunction. There can be no clear right on the part of the plaintiff if there is no affirmative finding that the Board abused its discretion."

*Roberts*, 13 Pa.Cmwlth. at 468, 320 A.2d at 144. We add that the only evidence produced by the appellants was that a certified hazard to pedestrian traffic existed on the main artery between the Oakmont section and the new Junior High School, and that seventh and eight grade students had been bused in past years. The crux of appellants' contention was that it was arbitrarily unreasonable for the appellee School Board to establish a policy which would be applied city-wide rather than creating a more flexible policy which could be tailored to the needs of individual areas. They also attacked the Board's reclassification of seventh and eighth graders as unreasonable.[3] The appellee countered that the reclassification of the junior high students in Oakmont was an entirely rational classification which merely served to standardize the student classification in this area with the already existing student structure in all other areas of the city. The

**3.** Although not argued as such, this argument of the parents is properly styled as an equal protection challenge of an unreasonable classification. The Equal Protection Clause of the United States Constitution allows a wide scope of discretion and prohibits only those classifications which are patently arbitrary or without any rational basis. *Frontiero v. Richardson,* 411 U.S. 677, 683, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

Board further claimed that it was required to apply its busing policy uniformly throughout the city because the language of Act 372 required all areas and all students in similar circumstances to be treated equally; the resulting increase in costs to the district from the busing of public and non-public school students from all other areas where pedestrain travel was hazardous would be prohibitive. The record shows that the Board, before announcing its policy, made an extensive city-wide investigation of the situation, including cost, number of students affected by the no-busing decision, relative geographic and hazardous situation of these pupils, and alternative available transportation.

In *Landerman v. Churchill Area School District,* 414 Pa. 530, 200 A.2d 867 (1964), we sustained the dismissal of plaintiffs' complaint in equity in a factual situation almost identical to the case now before us. The plaintiffs in *Landerman* who sought a preliminary injunction alleged that a decision of the School Board not to bus students in certain areas of the district exposed the children to hazardous walking conditions and was, therefore, an arbitrary decision. We there stated:

"In order for a court of equity to grant relief, it must clearly be shown that the school board acted outside the scope of its statutory authority or not in good faith. 'It is only where the board transcends the limits of its legal discretion that it is amenable to the injunctive process of a court of equity: *Detweiler v. Hatfield Borough School District,* 376 Pa. 555, 566, 104 A.2d 110; *Regan et al. v. Stoddard et al.,* 361 Pa. 469, 474, 65 A.2d 240.' *Spann v. Joint Boards of School Directors,* 381 Pa. 338, 349, 113 A.2d 281, 287 (1955).

The burden of showing such a clear abuse of discretion is a heavy one. *Regan v. Stoddard,* 361 Pa. 469,

65 A.2d 240 (1949); *Hibbs v. Arensberg,* 276 Pa. 24, 119 Atl. 727 (1923)."

414 Pa. at 534, 200 A.2d at 869. *Accord, Zebra v. Pittsburgh School District,* 449 Pa. 432, 440–41, 296 A.2d 748, 750–51 (1972).

We can find no evidence in the record that the Board acted outside its statutory authority or in bad faith. There is no finding of fact in the lower court opinion that the reclassification of Oakmont seventh and eighth graders as secondary students is unreasonable. There is no finding of fact as to the adequacy of alternative transportation, although the record contains evidence on both sides of this question. Although the lower court did conclude that the Board's legal assessment of Act 372 was not valid, the court nevertheless stated that such a finding was immaterial to the question of whether a preliminary injunction should or should not issue. Although the court's conclusion may have supported a finding that the Board was operating under a misconception of law, this conclusion was explicitly discounted as a ground for the action of the lower court, and in no event would such a finding, standing alone support the issuance of a preliminary injunction since, for this degree of interference in the exercise of School Board discretion, there must be a clear finding that the Board acted outside its statutory authority, or in bad faith.[4]

**4.** Judicial interference with the discretionary exercise of a school board power is permissible where the action of the board was based on a misconception of law, ignorance through lack of inquiry into the facts necessary to form an intelligent judgment, or the result of arbitrary will or caprice. *Zebra v. Pittsburgh School District,* 449 Pa. at 437, 296 A.2d at 750; *Hibbs v. Arensberg,* 276 Pa. at 26, 119 A. at 728. However, it does not follow that a preliminary injunction is justifiable in every case in which judicial interference is acceptable. There is a higher standard to be met for the issuance of a preliminary injunction—and even more so for a mandatory preliminary injunction. Therefore, any misconception of law entertained by the school board must be

474

Since there are no reasonable grounds for the action of the court below, the Order of the Commonwealth Court, which vacated the decree and remanded, is affirmed. Each party to bear own costs.

MANDERINO, J., dissents.

ROBERTS, J., dissents, believing that the record reflects the existence of apparently reasonable grounds supporting the chancellor's grant of a preliminary injunction. He would therefore reverse the order of the Commonwealth Court and affirm the decree of the Court of Common Pleas of Lackawanna County.

EAGEN and NIX, JJ., did not participate in the consideration or decision of this case.

found to be an error of law which caused the school board to act outside its statutory authority before a court can issue a preliminary injunction. *Cf. Chester Township School District v. Chester School District,* 418 Pa. 294, 210 A.2d 501 (1965).