**Andrew DISSINGER, Appellant**

v.

**MANHEIM TOWNSHIP SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 30, 2012.
Decided April 22, 2013.
Reargument Denied June 6, 2013.
Publication Ordered and Opinion Amended June 21, 2013.

Joshua Prince, Bechtelsville, for appellant.

Robert M. Frankhouser, Lancaster, for appellee.

BEFORE: COHN JUBELIRER, Judge, LEAVITT, Judge, and COVEY, Judge.

OPINION BY Judge LEAVITT.

Andrew Dissinger (Student) appeals an order of the Court of Common Pleas of Lancaster County (trial court) denying his request for a preliminary injunction. Student, a senior at Manheim Township High School, was suspended for 60 days in the last weeks of the school year, which deprived him of the ability to attend the high school commencement ceremony with the rest of his classmates. Student challenged his suspension from school as invalid because it was imposed without affording him the notice and opportunity to be heard that are guaranteed by Due Process and by the Public School Code of 1949.[1] We reverse the trial court's conclusion that Student received all the process he was due.

The central facts, as adduced in the preliminary injunction hearing, are not in dispute. On May 19, 2012, Student attended his high school prom, which was followed by a post-prom party at the high school. Because of concerns about Student's behavior, the high school assistant principal, Shannon Mayfield, and a township police officer present at the event took Student to a vacant classroom for questioning. Student denied drinking and explained that he had simply had an argument with his girlfriend. However, a breathalyzer test, to which Student consented, indicated a blood alcohol content of

---

1. Act of March 10, 1949, P.L. 30, *as amended,*     24 P.S. §§ 1–101–27–2702.

.04%. Mayfield called Christopher Dissinger, Student's father, to take his son home from the event. When Student's father appeared, Mayfield stated alcohol use would result in Student being "suspended at that time." Reproduced Record at 51a (R.R. ——). Mayfield told Student's father to appear at the high school Monday morning at 9:00 a.m. for a meeting.

On Monday, May 21, 2012, Student and his parents appeared for the meeting with Mayfield. The police officer who had administered the breathalyzer test was also present. Mayfield informed the family that Student was being suspended for the remainder of the school year because of his violation of the school's anti-alcohol policy. Under the terms of the suspension, Student would be allowed to take his final examinations and to graduate. However, he would not be allowed to attend classes or to participate in any extracurricular activities, including the graduation ceremony.

After this meeting, Mayfield sent a letter to Student's parent, and the letter stated that because of his violation of school policies, Student was "suspended from participating in extra-curricular and school activities and other privileges for sixty (60) calendar days beginning on May 20, 2012, and ending on July 18, 2012 at 12:00 midnight." School District Exhibit 1. The letter explained that a review of Mayfield's decision could be obtained by submitting a written "Request for Review" to Mayfield within seven days. The Dissingers assert that they did not receive the letter.

Before leaving the meeting with Mayfield, Student's father stated that he wanted to appeal the suspension. Later that day, Student's father received a call from the School District advising him that a meeting with the assistant superintendent had been scheduled for May 23, 2012.

On May 23, 2012, the Dissinger family met with Assistant Superintendent Timothy Williams. This meeting was not recorded or transcribed. Nevertheless, Mayfield testified under oath about the post-prom event that led to Student's suspension. In addition, Mayfield was questioned by Student's father, who is a police detective and experienced in judicial proceedings. Student also testified, under oath, and acknowledged taking "two sips" of vodka sometime prior to his arrival at the post-prom event at the high school. R.R. 47a.[2] Williams affirmed Student's suspension.

When Student's father asked about a further appeal, Williams informed him that he could obtain a hearing from the School Board. However, Williams cautioned the family that the Board might impose a harsher penalty, including an expulsion. If it did so, then Student would not receive his diploma.

On May 24, 2012, Williams sent a letter to Student's parents about the outcome of the "Superintendent's Hearing." School District Exhibit 2. The letter stated as follows:

> At the hearing, Andrew admitted that he had violated Board Policy # 227, Controlled Substances. Under the provisions of Administrative Guideline # 227, you requested Option 1 of those guidelines. Option 1 requires the following:
>
> a. out of school suspension for the remainder of the year;
>
> b. suspension from extracurricular activities for the remainder of the year;

---

2. However, Williams testified Student stated at the May 23, 2012, meeting, which was not recorded, that he had four or five sips. R.R. 57a.

If you fail to comply with all of the requirements contained therein, you shall be notified in writing. You shall then be subject to Option 2, which is a Board Hearing. At the hearing, the Board may expel you.

*Id.*[3]

At that point, the family retained counsel, who attempted to negotiate a resolution with the School District. When this effort failed, Student filed a petition for injunctive relief on May 31, 2012, the morning of the graduation ceremony. The injunction action challenged the validity of Student's 60–day suspension because the School District failed to follow the explicit procedural steps for suspending a student from school for more than 10 days.

The School District took the position that Student got all the process to which he was entitled. Its witnesses, however, could not agree on what kind of hearing Student had received. Mayfield testified that Student received an informal hearing on May 21, 2012, from Mayfield and a formal hearing from Williams on May 23, 2012. Williams testified that Student received two informal hearings. The School District also argued that the Dissingers had waived their right to a hearing before the School Board.

The trial court denied the petition for injunction. In its Section 1925(b) opinion, the trial court first found that the case was not moot because it raised issues that were capable of repetition. The court then addressed the merits. On the basis of *Burns By and Through Burns v. Hitchcock,* 683

A.2d 1322 (Pa.Cmwlth.1996), it held that Student did not have a protected property interest in his graduation ceremony and, thus, the hearing procedures to be followed in a suspension were irrelevant. In any case, the trial court held that the School District complied with the procedural requirements for a suspension. The trial court concluded that because Student admitted to drinking alcohol and knew the consequences of appearing at the high school under the influence of alcohol, his suspension was appropriate.

■ On appeal to this Court,[4] Student argues that the School District did not provide him a formal hearing before suspending him that comported with the requirements that every school district must follow before suspending a student from school for more than 10 days. Student also argues that he did not receive a proper informal hearing, which is required by Due Process and by the Public School Code of 1949. Student requests that the trial court's order be reversed and judgment entered in his favor.

Section 2603–B of the Public School Code of 1949 makes the State Board of Education responsible for the adoption of policies governing "the educational program of the Commonwealth." 24 P.S. § 26–2603–B(a).[5] The Board has the express authority to establish these policies by regulation "and may provide for the suspension, dismissal, or other reasonable penalty in the case of any … pupil who violates any of such rules or regulations."

---

**3.** Neither party addressed "options" or the specifics of Option 1 or Option 2.

**4.** On appeal we "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Brayman Construction Corporation v. Department of Transportation,* 608 Pa. 584, 602, 13 A.3d 925, 935 (2011) (quoting *Roberts v.*

*Board of Directors of School District of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478 (1975)). We do not interfere with that decision unless the law was "misapplied" or is "palpably erroneous." *Id.* at 602, 13 A.3d at 936.

**5.** Section 2603–B was added by the Act of March 30, 1988, P.L. 321.

Section 511 of the Public School Code of 1949, 24 P.S. § 5–511(a). Applicable here are the Board regulations governing "Students and Student Services" that are found in Chapter 12 of Title 22 of the Pennsylvania Code.

Section 12.6 deals with exclusions from school. It requires the school district to define and publish the offenses that can lead to exclusion from school. 22 Pa.Code § 12.6(a). Section 12.6(b) of the regulation then explains the difference between a suspension and expulsion and how each is effected. It states:

(b) Exclusion from school may take the form of suspension or expulsion.

(1) Suspension is exclusion from school for a period of from 1 to 10 consecutive school days.

(i) Suspensions may be given by the principal or person in charge of the public school.

(ii) A student may not be suspended until the student has been informed of the reasons for the suspension and given an opportunity to respond. Prior notice of the intended suspension need not be given when it is clear that the health, safety or welfare of the school community is threatened.

(iii) The parents or guardians and the superintendent of the district shall be notified immediately in writing when the student is suspended.

(iv) *When the suspension exceeds 3 school days, the student and parent shall be given the opportunity for an informal hearing consistent with the requirements in § 12.8(c)* (relating to hearings).

(v) Suspensions may not be made to run consecutively beyond the 10 school day period.

(vi) Students shall have the responsibility to make up exams and work missed while being disciplined by suspension and shall be permitted to complete these assignments within guidelines established by the governing board.

(2) *Expulsion is exclusion from school by the governing board for a period exceeding 10 school days* and may be permanent expulsion from the school rolls. *Expulsions require a prior formal hearing under § 12.8.*

22 Pa.Code § 12.6(b) (emphasis added). In short, the regulation defines suspension as an exclusion from school for one to 10 days, and an expulsion as an exclusion from school for more than 10 days. A suspension cannot be extended beyond three days without an informal hearing, and an expulsion requires a "prior formal hearing under § 12.8" to be effected. 22 Pa.Code § 12.6(b)(2).

An informal hearing does not need to be conducted before the suspension is effected, but it must be offered within the first five days of the suspension. Section 12.8(c) states as follows:

(c) *Informal hearings.* The purpose of the informal hearing is to enable the student to meet with the appropriate school official to explain the circumstances surrounding the event for which the student is being suspended or to show why the student should not be suspended.

(1) *The informal hearing is held to bring forth all relevant information regarding the event for which the student may be suspended* and for students, their parents or guardians and school officials to discuss ways by which future offenses might be avoided.

(2) The following due process requirements shall be observed in regard to the informal hearing:

(i) *Notification of the reasons for the suspension shall be given in writing to the parents or guardians and to the student.*

(ii) Sufficient notice of the time and place of the informal hearing shall be given.

(iii) A student has the right to question any witnesses present at the hearing.

(iv) A student has the right to speak and produce witnesses on his own behalf.

(v) *The school entity shall offer to hold the informal hearing within the first 5 days of the suspension.*

22 Pa.Code § 12.8(c) (emphasis added). Notably, written notice of the reasons for the suspension "shall be given in writing to the parents or guardians and to the student." 22 Pa.Code § 12.8(c)(2)(i). Here, Mayfield sent a written letter to Student's parents after the May 21, 2012 meeting, but not to Student.

The regulation also sets forth the requirements of a formal hearing, which must be given to a student who is being excluded from school for more than 10 days. Section 12.8(b) states as follows:

(b) *Formal hearings. A formal hearing is required in all expulsion actions.* This hearing may be held before the governing board or an authorized committee of the board, or a qualified hearing examiner appointed by the board. When a committee of the board or a hearing examiner conducts the hearing, a majority vote of the entire governing board is required to expel a student. The following due process requirements shall be observed with regard to the formal hearing:

(1) *Notification of the charges shall be sent to the student's parents or guardians by certified mail.*

(2) *At least 3 days' notice of the time and place of the hearing shall be given.* A copy of the expulsion policy, notice that legal counsel may represent the student and hearing procedures shall be included with the hearing notice. A student may request the rescheduling of the hearing when the student demonstrates good cause for an extension.

(3) The hearing shall be held in private unless the student or parent requests a public hearing.

(4) The student may be represented by counsel, at the expense of the parents or guardians, and may have a parent or guardian attend the hearing.

(5) The student has the right to be presented with the names of witnesses against the student, and copies of the statements and affidavits of those witnesses.

(6) The student has the right to request that the witnesses appear in person and answer questions or be cross-examined.

(7) The student has the right to testify and present witnesses on his own behalf.

(8) A written or audio record shall be kept of the hearing. The student is entitled, at the student's expense, to a copy. A copy shall be provided at no cost to a student who is indigent.

(9) The proceeding shall be held within 15 school days of the notification of charges, unless mutually agreed to by both parties. A hearing may be delayed for any of the following reasons. . . .

\* \* \*

(10) Notice of a right to appeal the results of the hearing shall be provided to the student with the expulsion decision.

22 Pa.Code § 12.8(b) (emphasis added).

■ There is no question, as held by the trial court, that a student does not enjoy a property interest in attendance at graduation that is protected by due process. *Burns*, 683 A.2d at 1322. Student challenged his suspension from school. The immediacy to his injunction action was the graduation ceremony that evening. Nevertheless, the relief sought was to enjoin the suspension. The trial court erred in holding that it was irrelevant whether Student's suspension comported with the requirements of 22 Pa.Code § 12.8.

The fact that a suspension impacts a graduation ceremony does not mean the underlying suspension is beyond due process protection or judicial review. *Mifflin County School District v. Stewart by Stewart*, 94 Pa.Cmwlth. 313, 503 A.2d 1012 (1986), is instructive on this point. In *Stewart*, a graduating senior was suspended for three days for fighting on the high school grounds. Before the end of the three-day suspension, the student received an informal hearing that resulted in an additional four-day suspension, which covered the day of the graduation ceremony. A formal hearing before the school board was scheduled for the day after graduation. The student sought injunctive relief to allow him to participate in his graduation, and it was granted by the trial court after it concluded that the school district had not complied with the hearing requirements set forth in 22 Pa.Code § 12.8.

The school district appealed, by which time the graduation ceremony had already occurred.[6] The school district challenged the trial court's holding that because the four-day suspension extended beyond the end of the school year, it was an "expulsion" within the meaning of 22 Pa.Code § 12.6. Because the student was a departing senior, had completed graduation requirements and was permitted to graduate, we held that "[o]ne is not expelled if one is made an alumnus." *Stewart*, 503 A.2d at 1014. Nevertheless, to suspend a student for more than three school days, the school was obligated to comply with Section 12.8(c)(2)(i) of Title 22 of the Pennsylvania Code, and it did not do so because it did not give the student written notification of the suspension. We concluded, therefore, that the four-day suspension was invalid.

As in *Stewart*, Student's challenge to his suspension had the immediate effect of barring his participation in graduation. However, it is the suspension from school that he challenged. Had he succeeded in challenging the suspension, which ran from May 20, 2012, to July 18, 2012, he would have been able, *inter alia*, to attend graduation.

■ Mayfield's letter stated that Student was suspended for 60 days, *i.e.*, from May 20, 2012, to July 18, 2012. Given that Section 12.6(b)(2) of Title 22 of the Pennsylvania Code states that exclusion from school for a period exceeding 10 school days constitutes an expulsion, Student should have received a formal hearing from the School Board. The School District acknowledges that a student is entitled to a formal hearing where the suspension lasts longer than 10 days. However,

---

**6.** This Court held that the matter was not moot because it involved an important public question which could otherwise evade review. We explained that a student does not have a property right as to attendance at a graduation ceremony, but does have a property right where the suspension deprives him of education.

the School District's brief is silent on the length of Student's suspension.

In *Stewart*, we explained that there is no expulsion where "one is made an alumnus." *Stewart*, 503 A.2d at 1014. In that case, the student received a three-day suspension that was later extended to four days. His suspension, in total, never reached 10 days, and we rejected the student's argument that the seven-day suspension was a constructive expulsion. Here, by contrast, the evidence showed that the School District expressly suspended Student for 60 days. Expulsion is defined as an "exclusion from school ... for a period exceeding 10 school days...." 22 Pa.Code § 12.6(b)(2). An expulsion may or may not be "permanent." *Id.* Student's 60-day suspension required a prior formal hearing, and it is beyond dispute that he was not given one.[7]

Section 12.6(b)(1)(iv) requires any student suspended in excess of three days be given an informal hearing, and on that point all parties agree. Even if we were to entertain the hypothesis that Student was only entitled to an informal hearing, we would still reach the conclusion that the School District failed to meet the applicable due process notice requirements.

An informal hearing requires written notification of the reasons for the suspension. While Student's father testified that he did not remember receiving the post-meeting letter from Mayfield, the trial court found that the letter had been sent and was sufficient to meet the notice requirements for an informal hearing. This letter gave the reasons for Student's suspension.[8] *See*

School District Exhibit 1. However, it did not give written notice of the time and place of the informal hearing; that Student could produce witnesses on his own behalf; or that Student could question witnesses at the informal hearing. Likewise, Student received no information about the specifics of the "hearing" before Williams until it had actually begun. R.R. 58a. The lack of a written notice given in advance of the informal hearing means that the "hearing" with either Mayfield or Williams did not satisfy the requirements of an informal hearing.

■ The School District argues that because Student's father requested a prompt appeal, the notice requirements were waived. We disagree. First, the School District did not obtain Student's waiver of the written notice, either expressly or in writing. Second, Student cannot waive rights he does not know exist. The School District was required to comply with the advance written notice requirements set forth in Section 12.8(c)(2) for an informal hearing, and it did not do so. If holding the informal hearing promptly made advance written notice of the informal hearing problematic, the School District should have arranged for an alternative means of delivery or requested a written waiver of the written notice.

The School District sought to accommodate the Dissinger family, and its sanction was not unreasonable. However, there is no air in the requirements in Chapter 12 of Title 22 of the Pennsylvania Code. The School District did not follow them and, thus, we reverse.

---

7. The requirements of a formal hearing include: notice that legal counsel may represent the student, notice of the names of witnesses and receipt of statements from the witnesses. 22 Pa.Code § 12.8(b)(2) and (5). A formal hearing also must be recorded. 22 Pa.Code § 12.8(b)(8). The School District does not dispute that these things were not done. Therefore, the requirements of a formal hearing were not met.

8. The letter was addressed to Student's parents. Student was 18 at the time and entitled to his own notice.

## ORDER

AND NOW, this 22nd day of April, 2013, the order of the Court of Common Pleas of Lancaster County dated May 31, 2012, in the above-captioned matter is hereby REVERSED.