IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles E. Smith,                          :
                    Appellant             :
                                          :
          v.                              :
                                          :
Commonwealth of Pennsylvania, et al.      :
Dauphin County Common Pleas Court         :
Warden Dauphin County Jail;               :    No. 882 C.D. 2018
Brian S. Clark                            :    Submitted: May 3, 2019


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED: July 10, 2019


          Charles E. Smith (Smith), a prisoner at Dauphin County Jail, appeals *pro se* from the May 7, 2018 order of the Dauphin County Court of Common Pleas (trial court) denying his request for a preliminary injunction to stay the implementation of a new haircut policy allegedly imposed by the Warden for the Dauphin County Jail, Brian S. Clark, and the Commonwealth of Pennsylvania (Warden).[1] Upon review, we affirm.

———————————

[1] Smith added the trial court as a party in his notice of appeal to this Court. The trial court is not a party to this matter but the adjudicator whose order we review. Further, we do not acknowledge parties in a case on appeal that were not part of the case before the trial court. Pa.R.A.P. 908 (explaining that "[a]ll parties to the matter in the court from whose order the appeal is being taken shall be deemed parties in the appellate court").

On February 28, 2018, Smith commenced this action by filing with this Court a petition "Requesting an Injunction/Stay of New Haircut Policy." *See* Smith's Petition Requesting an Injunction/Stay of New Haircut Policy at 1 (Injunction Petition). Smith alleges in the Injunction Petition that the Warden's new policy retains an outside agency to provide haircut services to prisoners, as opposed to using the prison barber, and requires prisoners to pay for their own haircuts; therefore, the service is no longer free. *Id*. Smith alleges that imposing the policy will constitute cruel and unusual punishment, as it will cause "one to not be able to get a haircut and be presentable for court appearances when one is not earning any money." *Id*. at 2. On March 2, 2018, this Court entered an order *per curiam* transferring the matter to the trial court due to lack of jurisdiction.[2] *Smith v. Warden: Dauphin Cty. Jail, Commonwealth of Pennsylvania* (Pa. Cmwlth., No. 102 M.D. 2018, filed March 2, 2018).

On April 20, 2018, Smith filed with the trial court a petition for leave to proceed *in forma pauperis*, which the trial court granted, and Smith subsequently

---

[2] In the March 2, 2018 Order, this Court stated that Smith had "failed to name a Commonwealth government or an officer thereof so as to vest this court with original jurisdiction[,]" relying on 42 Pa. C.S. § 761 (providing that "[t]he Commonwealth Court shall have original jurisdiction of all civil actions or proceedings . . . [a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity"). Smith named the Warden as a party, but the Warden is employed by the county, not the Commonwealth. Though Smith named the "Commonwealth of Pennsylvania" as a party, he did not make any allegations against the Commonwealth or any Commonwealth official, nor did he request any relief from the Commonwealth to vest this Court with original jurisdiction over the matter. For the Commonwealth Court to have original jurisdiction over a suit against the Commonwealth and other parties, the Commonwealth party must be an indispensable party. *Rachel Carson Trails Conservancy, Inc. v. Dep't of Conservation and Nat. Res. of Commonwealth*, 201 A.3d 273, 280 (Pa. Cmwlth. 2018) (holding that where a petitioner seeks absolutely no relief from the Commonwealth party and the involvement of the Commonwealth party is only minimal, the Commonwealth is not an indispensable party).

served Warden with the Injunction Petition. On May 7, 2018, the trial court issued an order denying Smith's request for an injunction and/or a stay because Smith had not "alleged irreparable and immediate harm" as a result of the implementation of the haircut policy. Trial Court Order dated 5/7/18. On May 22, 2018, Smith filed a motion with the trial court seeking reconsideration of its order, which the trial court subsequently denied on May 25, 2018. Trial Court Order dated 5/25/18. On June 8, 2018, Smith filed a notice of appeal with this Court, which transferred the appeal to the trial court for processing.[3] *See* Letter by Michael F. Krimmel, Chief Clerk, to Matt Krupp, Prothonotary, dated 6/20/18. The trial court docketed Smith's appeal on June 25, 2018 and provided a statement in lieu of a Rule 1925(a) opinion, explaining that the issues raised by Smith in his notice of appeal "are adequately addressed" in its May 7th order and because Smith "had not alleged the requisite irreparable and immediate harm by implementation of the policy[.]" Trial Court Statement dated 9/5/18. The trial court concluded that Smith had not "stated a claim for which [] relief [can] be granted." *Id*.

We commence our review with the Warden's argument that Smith's appeal is not timely, as timeliness is a question that implicates our jurisdiction. *Commonwealth v. Moir*, 766 A.2d 1253, 1254 (Pa. Super. 2000) (stating that the "question of timeliness of an appeal is jurisdictional"). Warden argues that Smith's appeal is untimely because Smith had 30 days from the trial court's May 7, 2018

---

[3] Pennsylvania Rule of Appellate Procedure 905(a)(4) provides,

> [i]f a notice of appeal is mistakenly filed in an appellate court . . . the clerk shall immediately stamp it with the date of receipt and transmit it to the clerk of the court which entered the order appealed from, and . . . the notice of appeal shall be deemed filed in the trial court on the date originally filed.

Pa.R.A.P. 905(a)(4).

order to file a notice of appeal with the trial court and Smith's appeal was not filed with the trial court until June 25, 2018. Warden's Brief at 3-5. Though Warden is correct that Smith's appeal was not filed with the trial court until June 25, 2018, Warden overlooks applicable law and facts that lead us to conclude that Smith's appeal was timely filed.

Initially, we note that contrary to Warden's assertion, the operative date of Smith's filing is not June 25, 2018, but rather is June 8, 2018. The appellate rules provide that to take an appeal as a matter of right from a lower court to an appellate court, a party must file "a notice of appeal with the clerk of the lower court" within 30 days after entry of the order from which the appeal is taken. Pa.R.A.P. 902 & 903(a). The rules plainly require Smith to file his notice of appeal with the trial court. However, Smith filed his appeal with this Court, and despite this mistake, he nevertheless preserved the filing date of June 8, 2018 because this is the day that this Court received his appeal. *See* Pa.R.A.P. 905(a)(4) (explaining that if a notice of appeal is mistakenly filed in an appellate court, the clerk "shall immediately stamp" the appeal with the date of receipt, transmit it to the clerk of the court which entered the order appealed from, and the notice of appeal "shall be deemed filed in the trial court on the date originally filed").

Further, our Supreme Court, in *Commonwealth v. Jones*, 700 A.2d 423 (Pa. 1997), explained that prisoners seeking to appeal, without the aid of counsel, cannot take the steps that other litigants can take, given their circumstances, to "monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline." *Jones*, 700 A.2d at 425 (citing *Houston v. Lack*, 487 U.S. 266, 270-71 (1988)). *Pro se* prisoners cannot travel to the courthouse to ascertain whether their appeal was timely stamped

4

and have no choice but to "entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers." *Id*. Recognizing the limitations that prisoners face attempting to deliver a timely appeal, our Supreme Court in *Jones* adopted what is known as the "prisoner mailbox rule." *Id*. This rule provides that a *pro se* prisoner's appeal is filed "as of the date he or she delivers it to the prison authorities for mailing." *Id.* at 425. The prisoner has the burden of showing that he or she, in fact, delivered the appeal within the appropriate time period. *Id*. at 426.

Here, the trial court filed its order denying Smith injunctive relief and a stay on May 7, 2018. Smith had 30 days to mail his notice of appeal to the trial court, by June 6, 2018, to meet the filing deadline. Smith dated his notice of appeal June 6, 2018 and attached a proof of service, wherein he represented that he served his appeal to interested parties including "Warden: Brian S. Clark" by hand delivery and Warden's attorney by first class mail on June 6, 2018. Based on the face of Smith's appeal documents, and applying the prisoner mailbox rule, we conclude that Smith delivered his appeal to prison authorities for mailing on June 6, 2018. *See Miller v. Unemployment Comp. Bd. of Review*, 476 A.2d 364, 366 (Pa. 1984) (explaining that we can determine the timeliness of a filing from the face of the documents and the records of the court). Our conclusion is supported by the fact that the postal authorities outside the prison stamped the envelope containing his appeal the next day, June 7, 2018, and this Court docketed Smith's appeal on June 8, 2018. As such, Smith's appeal was timely, and we now turn to the merits of his appeal.

Before this Court, Smith asserts that requiring prisoners to pay for their haircuts subjects them to cruel and unusual punishment. Smith first asserts that the policy is cruel and unusual because prisoners have no income and survive off gifts

5

donated by friends and family. Injunction Petition at 2. Smith alleges that by requiring prisoners to use the resources they have for haircuts, this policy will leave the prisoner "barely able to survive," as half of all donated gifts are already taken for room and board expenses. *Id.* Second, Smith argues that the policy is cruel and unusual because prisoners who cannot afford a haircut will have to appear in court without receiving appropriate grooming. *Id.*; Smith's Brief at 9.

The standard of this Court's review of a trial court's order granting or denying a preliminary injunction is to ascertain whether the court abused its discretion. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003). To render this determination,

> we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the trial court.

*Id.* (citing *Roberts v. Bd. of Dirs. of Sch. Dist.*, 341 A.2d 475, 478 (Pa. 1975)) (brackets omitted). Our inquiry "is limited to a determination of whether an examination of the record reveals that any apparently reasonable grounds support the trial court's disposition of the preliminary injunction request." *Id.* at 1001 (quotations omitted).[4] A trial court has apparently reasonable grounds for its denial of relief where it "properly finds that any one of the following "essential prerequisites" for a preliminary injunction is not satisfied." *Id.*

---

[4] Our Supreme Court in *Warehime v. Warehime*, 860 A.2d 41, 46, n.7 (Pa. 2004), noted that the scope of review in preliminary injunction matters is plenary, as the appellate court is to conduct a searching inquiry of the record.

6

There are six essential prerequisites that a party must establish prior to obtaining preliminary injunctive relief. The party must show: (1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages, (2) that greater injury would result from refusing an injunction than granting it, and concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings, (3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct, (4) that the activity the injunction seeks to restrain is actionable, that the requesting party's right to relief is clear and is likely to prevail on the merits, (5) that the injunction it seeks is reasonably suited to abate the offending activity, and (6) that a preliminary injunction will not adversely affect the public interest. *Warehime v. Warehime*, 860 A.2d 41, 47 (Pa. 2004). The burden is on the party that requested the preliminary injunction, which, in this case, is Smith.

Here, the trial court concluded that Smith failed to plead the first prong to obtain a preliminary injunction, that is, Smith failed to allege facts in his Injunction Petition showing immediate and irreparable harm sufficient for his claim to proceed. Upon review of the Injunction Petition, we conclude that the trial court had "apparently reasonable grounds" to reach this conclusion. In his Injunction Petition, Smith identified two possible harms that could result from Warden's implementation of the policy. The first harm identified by Smith is that indigent prisoners will be "barely able to survive" if forced to pay for their haircuts. Injunction Petition at 2. The second harm identified by Smith is that indigent prisoners will be forced to make court appearances without proper grooming. *Id.* However, the harms identified by Smith are speculative. Smith alleges what he thinks the results of the policy will be, but he does not allege any specific facts

7

showing how the policy, in practice, actually causes prisoners to "barely" survive. *See Summit Towne Ctr., Inc.*, 828 A.2d at 1002 (affirming trial court's conclusion that the harm alleged did not meet the immediate and irreparable harm prong for a preliminary injunction because the evidence rested on "speculation" and no concrete evidence of harm was presented). Similarly, Smith does not allege that prisoners have actually appeared in court poorly groomed and, as a result, have suffered "irreparable harm that cannot be adequately compensated by damages."[5] Because Smith did not allege facts to support his assertion that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages, we conclude that the trial court had apparently reasonable grounds to deny Smith his request for relief and, therefore, did not abuse its discretion.

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[5] Smith also argues to this Court that the new haircut policy violates prisoners' equal protection rights because it requires them to pay for their haircuts, rather than receiving haircuts for free, and the policy treats indigent prisoners differently than prisoners with money. Smith's Brief at 8-9. But, as noted by Warden, Smith did not raise this argument in his Injunction Petition before the trial court, and therefore, Smith has waived this issue for consideration on appeal. *See* Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles E. Smith,                                :
                Appellant       :
                            :
         v.                             :
                            :
Commonwealth of Pennsylvania, et al. :
Dauphin County Common Pleas Court  :
Warden Dauphin County Jail;         :    No. 882 C.D. 2018
Brian S. Clark                       :

## O R D E R

AND NOW, this 10th day of July, 2019, the May 7, 2018 order of the Court of Common Pleas of Dauphin County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge