# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Cranberry        :
                                  :
                                  :
                   v.                :   No. 201 C.D. 2020
                                  :   Argued: February 8, 2021
Randy J. Spencer,            :
                Appellant   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE J. ANDREW CROMPTON, Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER            FILED: March 24, 2021

Randy J. Spencer appeals from a November 13, 2019 Order of the Court of Common Pleas of Venango County (trial court), which granted the Township of Cranberry's (Township) Motion for Special or Preliminary Injunction Prior to Hearing (Motion) and ordered Spencer to take all necessary steps to remove the junked motor vehicles and travel trailers from his property as they were a public nuisance that created safety concerns. The Township sought the injunction after flooding of a nearby creek resulted in a road closure, which the Township alleged was caused by Spencer's junked vehicles and travel trailers being washed onto and across the roadway. Before this Court, Spencer argues that the trial court had no reasonable ground to grant the Motion because no non-speculative evidence was

presented to support a finding that Spencer's property caused or contributed to any flooding issues, the trial court erred in finding that Spencer's vehicles blocked the roadway, and the Township's ordinance does not authorize the relief requested. Because there was a reasonably apparent basis for the trial court to grant the preliminary injunction, we affirm the trial court's Order.

## I.    BACKGROUND

Spencer is the owner of 4110 Deep Hollow Road, Franklin, Pennsylvania, which is located in the Township (Property) and upon which a number of vehicles and travel trailers are kept. "The Property is in a floodplain and adjacent to" Lower Two Mile Run (Creek), which flows into the Allegheny River. (Complaint in Equity (Compl.) ¶ 4, Reproduced Record (R.R.) at 2a.) The Allegheny River runs beside United States Route 322 (U.S. 322) "and is located approximately 800 feet from the Property." (R.R. at 2a.)

After a flooding incident in July 2019 involving Spencer's Property, the Township filed a Complaint in Equity (Complaint) with the trial court, pursuant to Section 132-6(C) of the CRANBERRY TOWNSHIP, PENNSYLVANIA, PROPERTY MAINTENANCE CODE (2018) (Code),[1] alleging that Spencer's storage of the junk vehicles on the Property "constitute[s] a nuisance[]" as well as "violat[es] [] the Township's ordinances." (R.R. at 6a.) The Complaint sought an order requiring

---

[1] Section 132-6(C) of the Code states in relevant part that the

>    chapter may also be enforced through an action in equity brought in the [trial court] . . . as an alternative to or in addition to any other enforcement action or proceeding. If a violation of this chapter also results in or constitutes the permitting, creation or existence of a public nuisance, such action in equity may be for, though not necessarily limited to, abatement and/or removal of such public nuisance.

Code § 132-6(C).

Spencer to remove the junk vehicles, and if Spencer failed to do so, authorizing the Township to remove them, as well as an injunction prohibiting Spencer from storing more than two junk vehicles at the Property. (*Id*. at 6a-7a.)

One day after filing the Complaint, the Township filed its Motion, which largely mirrors the allegations and relief sought in the Complaint. Township averred as follows. On July 19 and 20, 2019, heavy storms impacted the area of the Township. The Creek flooded, carrying junk vehicles from Spencer's Property into the Creek, causing it "to back up and spill dangerous amounts of water, mud, rock, sand, and other junk vehicles and junk vehicle parts, onto Deep Hollow Road . . . , U.S. 322, other private property, and into the Allegheny River." (Motion ¶ 9, R.R. at 31a.) The Township further averred that the junk vehicles from Spencer's Property "plugg[ed] the road pipe," causing increased flooding. (R.R. at 31a.) The Township alleged flood water "back[ed] up until the pressure became so great that it flushed the lodged items through the pipe." (*Id*.) The Township also averred that some junk vehicles from Spencer's "Property appear[ed] to have gone over U.S. 322 while the floodwater was backed up." (*Id*.) According to the Township, Spencer had been previously cited for violating the Code. Specifically, on May 22, 2019, the Township filed a non-traffic citation with the Magisterial District Judge (MDJ) for violation of Section 132-4(D) of the Code, which prohibits "[t]he storage or accumulation of more than two abandoned or junked motor vehicles[2] that can be seen from any public highway, road, street, avenue, lane or alley which is maintained by the Township or by the Commonwealth of Pennsylvania." Code § 132-4(D). The

---

[2] Section 132-3 defines an abandoned or junked motor vehicle as "[a]ny motor vehicle that: [] [i]s not in operable condition; and/or [] [d]oes not have properly affixed thereto both a current Pennsylvania inspection sticker (if required in order to be legally operated on a public street or highway) and a current license plate." Code § 132-3.

3

MDJ found Spencer guilty on July 25, 2019, but Spencer had not yet removed the vehicles at the time the Township initiated this action in September 2019.

The Township alleged that Spencer's inaction is "jeopardizing the health, safety and welfare of the citizens of the Township." (R.R. at 30a.) Accordingly, it asked the trial court to grant its request for a preliminary injunction, ordering Spencer to remove the vehicles within 10 days or authorizing the Township to do so if he does not, and enjoining further storage of more than two junked vehicles on the Property.

The trial court conducted an evidentiary hearing on the preliminary injunction on November 6, 2019. The Township presented the testimony of its Township Manager, who testified as follows. Township Manager was called to the Property and Deep Hollow Road the morning of July 20, 2019. (*Id*. at 133a-34a.) When he arrived on the scene, Township Manager took the photographs that were submitted into evidence at the hearing. (*Id*. at 134a.) Township Manager described "the trailers themselves block[ing] the roadway along with debris from stream banks . . . . There were other automotive vehicles on[] the roadway. That was [his] immediate view of the [P]roperty and the concerns that [he] had and the reason why [he] started making other phone calls." (*Id*. at 134a-35a.) Although the trailers and vehicles have since been removed from the roadway, photographs that Township Manager took two days before the hearing "identify debris of what was left from destroyed vehicles during the flooding event from this summer that [was] still in place along the stream banks," which could be washed downstream causing injury. (*Id.* at 135a-36a.) "[T]he vehicles were put back in their same locations" on the Property, as before the flood occurred. (*Id*. at 136a.) Thus, Township Manager was concerned that the vehicles created "the same condition that [existed] prior to the floo[d] on the

4

19th and 20th with different vehicles in the same position." (*Id.*) On cross-examination, Township Manager admitted he was not aware of the elevation around the Property and Deep Hollow Road or how far the water came up during the flood. (*Id.* at 141a.) He further acknowledged no one saw the vehicles or trailers blocking the culvert or debris being washed through the culvert. (*Id.* at 142a-43a.) Furthermore, Township Manager testified he did not perform any mathematical calculations regarding the flood. (*Id.* at 144a, 154a.) Township Manager stated that some of the vehicles that were blocking the road were not Spencer's. (*Id.* at 147a.) Township Manager also admitted that any future threat of a flood is speculation, as was his belief that the culvert was blocked, which was based on what he witnessed at the scene that morning and in photographs. (*Id.* at 148a-50a, 155a.) Township Manager stated his future concern would be that "somebody else could be harmed . . . from those items that are still remaining on [] Spencer's [P]roperty." (*Id.* at 157a-58a.)

Spencer testified on his own behalf as follows. Spencer examined two of the photographs taken after the flood and testified that he only owned one of the four vehicles shown in those photographs. (*Id.* at 162a-65a.) On cross-examination, Spencer stated he did not know if any of his vehicles went into the roadway because he was not there at the time of the flood, but, when confronted with other photographs of the aftermath, Spencer identified other vehicles that belonged to him that crossed Deep Hollow Road. (*Id.* at 168a-69a.) Upon questioning by the trial court, Spencer testified that all but two of the trailers photographed were his, and at least two of his trailers ended up south of the U.S. 322 viaduct after the storm. (*Id.* at 170a-71a.) Spencer stated he did not agree with the Township Manager's

characterization of his vehicles as junk as they were worth, in total, "over six figures." (*Id*. at 173a.)

After the hearing, the trial court issued findings and an opinion granting the preliminary injunction. The trial court stated that Spencer

> testified that all vehicles in the pictures in evidence, except for two of the travel trailers and a [sport utility vehicle] were his property. [Spencer] also conceded that at least two of his trailers, and perhaps more, wound up on the other side of [U.S.] 322[,] south of where his premises [is] located and this would indicate either that the vehicles went through the flooded tunnel under [U.S.] 322 or were swept by the flood water over [U.S.] 322.

(Trial Ct. Op. at 2.) The trial court also stated that no expert testimony was presented on

> the dynamics of the flooding, but what is clear is that this large quantity of trailers, which are visible in the photographs, Exhibits 5 and 6, **pose a threat in the event of any further flooding and is a nuisance** as the trailers and [] [Spencer's] land on which they are situated is within the floodplain.

(*Id*. (emphasis added).) The trial court determined that, during the events of July 19 to 20, 2019, Deep Hollow Road and U.S. 322 were

> flooded and [] [Spencer's] trailers, which are stored **in large quantity** east and west of Deep Hollow Road, were dislodged by the water. Deep Hollow Road at [Spencer's] [P]roperty was **impassable**. It was so impassable that emergency vehicles such as fire trucks and other rescue vehicles could not access properties where people were stranded north of the intersection of Deep Hollow Road with U[.]S[.] 322.

(Trial Ct. Op. at 2-3 (emphasis added).)

6

The trial court stated that Spencer pointed out the trailers are "valuable commodities" and that "he is at his own pace moving the trailers from that location to another location." (Trial Ct. Op. at 3.)

Ultimately, the trial court found that there are "safety concerns" and "the Township has a duty to the other residents . . . to assure their protection and to avoid having the trailers pollute [the Creek] and the Allegheny River." (*Id.*) The trial court further found that "an injunction in this case is necessary to prevent immediate and [irreparable] harm and that the harm could not be compensated adequately by damages." (*Id.*) The trial court also found that greater injury would result from denying the injunction than granting it and expressed the intention "to reasonably structure the methods available to [Spencer] to bring himself into compliance with this order" such that Spencer would not be caused substantial harm by the order. (*Id.* at 3-4.) In addition, the trial court found that the injunction will "restore the parties to their status as it existed prior . . . to [Spencer's] alleged wrongful conduct." (*Id.* at 4.) The trial court also found that the Township has a clear right to relief. The trial court anticipated more extensive evidence on causation and risk at a full and final hearing, and, thus, concluded that the Township was likely to prevail on the merits. (*Id.*) Finally, the trial court stated the injunction was "reasonably suited to abate the offending activity" and would "not affect the public interest." (*Id.*)

Accordingly, the trial court granted the preliminary injunction and ordered Spencer to "take all necessary steps to remove the junked motor vehicles" from the Property and to submit, within 20 days, a specific plan regarding the removal of the trailers from the Property within a reasonable time period. (Trial Ct. Order ¶ 1.) The trial court stated that it was "mindful that [] [Spencer] ha[d] an agreement with the Pennsylvania Department of Transportation" (DOT) to remove the vehicles from the

7

Property and the trial court would accept that plan "as long as the plan demonstrate[d] palpable and reasonable efforts to abate the nuisance." (*Id.* ¶¶ 1-2.) The trial court further enjoined Spencer "from storing any additional vehicles on the [P]roperty." (*Id.* ¶ 2.)

On December 5, 2019, Spencer submitted the Plan of Abatement (Plan) to the trial court. The Joint Stipulated Order entered into between Spencer and DOT was attached to the Plan.[3] On December 13, 2019, Spencer appealed the trial court's Order to the Superior Court. On January 15, 2020, the Superior Court transferred Spencer's appeal to this Court on the basis that we have exclusive appellate jurisdiction over appeals from the courts of common pleas as this falls under a municipality planning or zoning code. *See* Section 762 of the Judicial Code, 42 Pa.C.S. § 762.

## II.   PARTIES' ARGUMENTS

Spencer argues that the Township did not present sufficient evidence to prove that the Township "had a reasonable likelihood of prevailing on the merits," one of the requirements for granting a preliminary injunction. (Spencer's Brief (Br.) at 11.) More specifically, Spencer argues that the trial court did not have a reasonable basis for finding that Spencer caused or contributed to any damage or endangered others. Spencer further asserts that the trial court misstated the record when it found that at least two of Spencer's trailers crossed U.S. 322, south of the Property. (*Id.*) Spencer further contends that the Township could not establish the required level of harm or injury if the preliminary injunction was denied because the record is full of

---

[3] The Plan is located in the Reproduced Record at pages 118a-19a. The Joint Stipulated Order is located in the Reproduced Record at pages 120a-22a. However, it is not dated and is signed only by Spencer.

speculation as to the danger to people during a flood but lacks any expert testimony as to who or what caused the flood. (*Id.* at 12-13.) Spencer also asserts that none of the vehicles photographed as blocking Deep Hollow Road belonged to him, and, without any evidence that Spencer's vehicles blocked the roadway, the trial "court's conclusion was speculative and not supported by evidence." (*Id.* at 14.) Finally, Spencer contends that the Code provision relied upon by the Township does not support the grant of the preliminary injunction. That provision, he argues, only prohibits storage of two or more abandoned or junked vehicles that are visible from a roadway and any violation thereof could be cured by installing screening, which would have blocked the view of the vehicles. (*Id.* at 15.) Spencer also argues that the Code, which the Township admitted was the basis of the Complaint, "does not authorize a general equity action," as has been brought here. (*Id.*)

The Township responds that the trial court properly granted a preliminary injunction in this case as the Township satisfied its burden. (Township's Br. at 10-12.) Spencer willfully violated the Code and continues to do so, the Township asserts, and thus, this "[d]efiance of an ordinance" authorized the trial court to grant injunctive relief. (*Id.* at 12.) The Township contends that this action is supported not only by the Code violation, but also because the junked vehicles constitute a public nuisance. (*Id.* at 13-14.) The Township argues that Spencer wrongly claims the injunction was sought based only on the violation of the Code and ignores the Township's concern about the public's safety related to the storage of junked vehicles in a floodplain near a trafficked roadway. (*Id.* at 13.) The Township maintains that Spencer's position that the harm was speculative overlooks the testimony and evidence presented that "Spencer's [vehicles and trailers] were washed off [the P]roperty and went across U.S. 322" once already, and there is no

9

requirement that the Township wait for another flood or produce eyewitness testimony that Spencer's vehicles blocked and/or crossed the roadway. (*Id*. at 14.) The Township asserts that the trial court made a logical inference based on the circumstantial evidence presented as it was evident that Spencer's vehicles were moved by the flood waters across U.S. 322, and they would do so again if not removed. (*Id*.) The Township contends that it has a right to abate a public nuisance, which is potentially dangerous to its citizens due to the clear flooding issues, and "[t]he trial court did not err in granting injunctive relief." (*Id*. at 15.)

## III. DISCUSSION

To be entitled to a preliminary injunction, the moving party must establish the following six requirements:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and[] (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 502 (Pa. 2014); *see Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003). An appellate court reviews an order that denies or grants a preliminary injunction for an abuse of discretion. *Summit Towne Centre*, 828 A.2d at 1000. Furthermore, an appellate court "examine[s] the record to determine if there were any apparently reasonable grounds" for the order granting a preliminary injunction.

10

*Roberts v. Bd. of Dirs. of Sch. Dist.*, 341 A.2d 475, 478 (Pa. 1975). As the trial court is the fact finder, we are bound by its findings of fact, as long as they have adequate support from the record, as well as its credibility and evidentiary weight determinations. *Ziegler v. City of Reading*, 216 A.3d 1192, 1202-03 (Pa. Cmwlth. 2019).

The trial court made findings to support each of the six requirements above. Spencer argues that there was no reasonable basis to conclude that **his** vehicles or trailers caused or contributed to any damage or endangered others from the flood water. We disagree. Based upon the photographs and testimony presented, including Spencer's own testimony, the trial court found that "all the vehicles . . . except for two of the travel trailers and a [sports utility vehicle] were [Spencer's] property"; "at least two of [Spencer's] trailers, and perhaps more, wound up on the other side of [U.S.] 322[,] south of where his premises are located and this would indicate either that the vehicles went through the flooded tunnel under [U.S.] 322 or were swept by the flood water over [U.S.] 322." (Trial Ct. Op. at 2.) Spencer contends that the trailers "had not been identified as his," because "he was unable to retrieve or access any of the vehicles." (Spencer's Br. at 11.) However, Spencer's argument does not nullify the safety concerns that the trial court found exist because vehicles remain on the Property, largely in the same location as they were before the flood, and, as a result, they continue to pose a reasonable risk of similar future problems. Because Spencer's Property is located in a floodplain, the trial court noted that the evidence supported an injunction to prevent the danger his vehicles pose in the future should another flood occur. The lack of expert testimony goes to the weight of the evidence presented, and the trial court found that the photographs and testimony presented were enough at this stage of proceedings to demonstrate a

11

violation of the Code and a nuisance. (Trial Ct. Op. at 2.) As we review whether there were "any apparently reasonable grounds" in the record, for the trial court's action, *Roberts*, 341 A.2d at 478, we cannot conclude such grounds are lacking given the trial court's supported findings.

Further, Spencer argues that the trial court's conclusion that Spencer's vehicles blocked Deep Hollow Road is mere speculation. However, based on the photographs and Spencer's testimony that all but two of the trailers were his, the trial court found that the multiple vehicles that were swept away in the flood waters during the flood from the Property contributed to making Deep Hollow Road "impassable." (Trial Ct. Op. at 2.) The trial court made findings of fact and assessed the risk of harm to the public based on those facts. We are to defer to the trial court's determination as long as there are "any apparently reasonable grounds" in the record for its decision, *Roberts*, 341 A.2d at 478, and we conclude, based upon a review of the record, that there are here.

Spencer also asserts that Section 132-4(D) of the Code was not intended to address this situation and any violation would be remedied by hiding the vehicles from view with screening. However, Section 132-4(D) is not the sole basis for the relief the Township requested or the sole basis for the relief the trial court granted. The Township also alleged that the vehicles constitute a public nuisance and, thus, warranted a preliminary injunction. In addition to a common law public nuisance action, Section 132-6(C) of the Code specifically allows for public nuisance actions when a violation of the Code results in the need to abate or remove that public nuisance. Code § 132-6(C). A public nuisance is "an unreasonable interference with a right common to the general public." *Diess v. Pa. Dep't of Transp.*, 935 A.2d 895, 912 (Pa. Cmwlth. 2007) (quotation omitted). An unreasonable interference includes

12

"a significant interference with the . . . public safety . . . or . . . conduct [that] is proscribed by a statute, ordinance or administrative regulation." *Id.* (quoting Restatement (Second) of Torts § 821B(2)(a), (b) (Am. Law Inst. 1979)). The Township argued before the trial court, and argues before this Court, that Spencer's actions in keeping the vehicles after the flood threatens the safety of its residents.

The trial court accepted this argument and the evidence of the previous flood to determine there was a danger to residents within the Township as the Property is located in a floodplain and the conditions remain unchanged. (Trial Ct. Op. at 2-3.) The Township has the prerogative to prevent actions that could potentially "increase the danger from floods and freshets to the property and lives of its inhabitants." *Borough of Tyrone v. Stevens*, 36 A. 166, 167 (Pa. 1897). Furthermore, while screening may hide the vehicles from view, there is no evidence that it would remedy the Township's safety concerns related to the Property and the vehicles remaining on the Property. The trial court had an apparently reasonable basis to conclude that the Property enhances the dangers from floods, especially those within a floodplain, and creates safety concerns that the Township has a duty to avoid or abate. (*See* Trial Ct. Op. at 3.) Accordingly, we will not overturn the trial court's granting of injunctive relief.

## IV. CONCLUSION

The credited evidence presented supports that future danger from potential future flooding is a legitimate concern because Spencer's junked vehicles and trailers remain on the Property in the same location as they were when they were swept onto the roadway by the previous flood waters. The trial court's findings that these vehicles are a threat to the safety of the Township's residents and that the six

13

requirements for a preliminary injunction have been met are supported by "any apparently reasonable grounds." *Roberts*, 341 A.2d at 478. Therefore, we affirm the trial court's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Cranberry        :
                              :
                              :
            v.               :     No. 201 C.D. 2020
                              :

Randy J. Spencer,        :
                  Appellant    :

## **O R D E R**

**NOW**, March 24, 2021, the Order of the Court of Common Pleas of Venango County, dated November 13, 2019, is **AFFIRMED.**

_____
**RENÉE COHN JUBELIRER,** Judge