**PHILIPS BROTHERS ELECTRICAL CONTRACTORS, INC., Appellant**

**v.**

**VALLEY FORGE SEWER AUTHORITY.**

Commonwealth Court of Pennsylvania.

Argued May 17, 2010.

Decided July 1, 2010.

Barbara Sumple–Sullivan, New Cumberland, for appellant.

Thomas P. Hogan, Jr., West Chester, for appellee.

BEFORE: COHN JUBELIRER, Judge and BROBSON, Judge and KELLEY, Senior Judge.

OPINION BY Judge BROBSON.

Appellant Philips Brothers Electrical Contractors, Inc. (Philips) appeals from an order of the Court of Common Pleas of Chester County (trial court) that denied Philips's petition for preliminary injunctive relief. Philips initiated its action against the Valley Forge Sewer Authority (Authority) in order to compel the Authority to comply with the law commonly referred to as the Separations Act.[1]

The Separations Act provides as follows:

> Hereafter in the preparation of specifications for the erection, construction, and alteration of any public building, when the entire cost of such work shall exceed four thousand dollars, it shall be the duty of the architect, engineer, or other person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilating, and electric work; and it shall be the duty of the person or persons authorized to enter into contract for the erection, construction, or alteration of such public buildings to receive separate bids upon each of the said branches of work, and to award the contract for the same to the lowest responsible bidder for each of said branches.

53 P.S. § 1003.

Philips, an electrical contracting company, filed a complaint in equity with the trial court on August 10, 2009, asserting that the Authority, as a governmental entity established under the Municipal Author-

---

1. Act of May 1, 1913, P.L. 155, § 1, *as amended, 53 P.S. § 1003.*

ities Act (MAA), 53 Pa.C.S. §§ 5601–5623, was required to comply with the Separations Act. We summarize the averments in the complaint below.

The Authority advertised that it was seeking bids for Contract No. 09–02 for construction upgrades to several of the Authority's sewage pump stations. Initially, the Authority intended to open the bids on August 3, 2009, but it extended the opening date to August 13, 2009. Philips asserted that it is (or would have liked to have been) a prospective bidder on the project and that, consequently, it had a direct, immediate, and substantial interest in ensuring that the Authority complied with the Separations Act. Philips further asserted that the Authority, by failing to comply with the Act, precluded Philips from participating in the public bidding process with respect to the electrical aspects of the project.

Philips averred that the pump stations are public buildings under the Separations Act and that, therefore, the Authority is and was required to comply with the Separations Act. The estimated cost of the electrical work for the project is $500,000. Hence, the amount exceeds the statutory $4,000 amount below which the Separations Act does not apply. Philips averred that the work required under the project includes replacement of station pumps, motors and valves, piping relocations and mechanical, electrical and structural upgrades and repairs. As per the contract specifications, the work to be performed includes demolition at the site, concrete repair, masonry restoration, metal work, carpentry work, door work, ceiling work, HVAC work, and electrical construction work. The totality of the work involved under the contract, Philips asserted, rendered the contract one that encompassed the "alteration" of public buildings—the buildings constituting the pump stations.

Philips averred that the bid request identified "separate, prime construction disciplines" as "subgroups," but that these disciplines are really separate construction trades, which the Separations Act refers to as "branches," and that these individual disciplines are necessary to complete the "alteration" work. The work, Philips averred, will alter the pump station buildings as well as replace equipment located in the buildings. This unification of work under a single prime contractor, Philips contended, violates the Separations Act. Philips implied in the complaint that it requested the Authority to separate the work and to request bids on separate contracts, but counsel for the Authority refused to comply.

Based upon these facts, Philips requested the trial court to grant preliminary and permanent injunctive relief, preventing the Authority from opening bids and awarding a contract for the project, to void any contract the Authority might award to a single prime contractor, and to direct the Authority to request bids for each particular discipline addressed in the Separations Act.

On the same day it filed its complaint, Philips filed a petition for preliminary injunction, asserting the above facts and claiming that (1) such relief is necessary to maintain the status quo, and (2) any potential harm that might result to the Authority if the trial court granted a preliminary injunction was outweighed by the impact on Philips of a bidding and award process that violates the Separations Act. The pleading also states that "a formal bid protest has been filed with [the Authority]." (Reproduced Record (R.R.) at 9a.) The trial court entered an order on August 12, 2009, enjoining the Authority from opening any bids it had received and from awarding a contract. The trial court also scheduled a hearing for September 10,

2009, on whether the preliminary injunction should continue.

By order dated October 5, 2009, the trial court denied Philips's petition for preliminary injunction. The trial court, while tacitly agreeing with Philips that the contract work contemplated by the Authority fell within the ambit of the Separations Act, concluded that Philips was not entitled to a preliminary injunction. The trial court reasoned that Philips's failure to submit a bid meant that it was impossible to determine if Philips would have been a successful bidder and that, therefore, Philips could not quantify its damages. The trial court, while recognizing that Philips, through its complaint, was seeking to compel the Authority to comply with the Separations Act, relied upon this Court's decision in *C.O. Falter Construction Corporation v. Towanda Municipal Authority*, 149 Pa.Cmwlth. 74, 614 A.2d 328 (1992), and concluded that Philips could not satisfy the standing requirements necessary to maintain its action based solely on the fact that Philips is neither a taxpayer nor a ratepayer with regard to the Authority. Further, the trial court concluded that Philips had not shown irreparable harm and that the Authority had made a good case that delay in the contract process would harm the public interest.

■ On appeal to this Court,[2] Philips raises the following two issues: (1) whether Philips has standing to bring this equitable action based on an identifiable, substantial, direct, and immediate interest in preventing the Authority from awarding the contract in violation of the Separations Act when the Authority's actions preclude Philips from bidding on the general contract; and (2) whether the trial court erred in concluding that Philips did not establish direct, immediate, and irreparable harm based upon its assertion that it could not bid because it is not a prime contractor.[3]

■ As to the issue of standing, in order for a party to establish that it has standing, it must demonstrate that (1) it has a substantial interest in the subject matter of the litigation, (2) it has a direct interest in the litigation, and (3) the interest it is asserting is immediate and not a remote consequence of the action it seeks to challenge. *Finn v. Rendell*, 990 A.2d 100 (Pa. Cmwlth.2010).

In *Mechanical Contractors Association of Eastern Pennsylvania, Inc. v. Southeastern Pennsylvania Transportation Authority*, 654 A.2d 119 (Pa.Cmwlth.1995) (*SEPTA*), this Court considered a similar injunction action that an association filed against SEPTA, in which the association asserted that SEPTA had violated the Separations Act. The question presented in that case was whether SEPTA had complied with the Separations Act in requesting bids for a single design/build contract when it delegated to the prime contractor the duty to solicit bids from subcontrac-

---

**2.** This Court's standard of review of a trial court's order granting or denying a request for preliminary injunctive relief is limited to determining whether the trial court had any reasonable grounds for its findings and whether the trial court's application of the law is palpably erroneous or misapplied. *City of Reading v. Firetree, Ltd.*, 984 A.2d 16 (Pa. Cmwlth.2009).

**3.** The Authority questions whether the trial court was correct in concluding that the work the Authority sought to have performed under the contract fell under the Separations Act, arguing that the work did not constitute the "alteration" of a public "building." We agree with the trial court's conclusion, however, that the work to the buildings that house the sewage pumps contemplated under the contract, in conjunction with the work to be performed on the pumps themselves, was sufficiently comprehensive to constitute an alteration to a public building.

tors. This Court, relying upon language from a decision of then-trial court Judge Ralph Cappy, *Metz v. Housing Authority of the City of Pittsburgh*,[4] concluded that SEPTA could not delegate that function to the prime contractor. We quoted Judge Cappy as follows:

> The legislature clearly intended to keep the expenditure of public funds a process open and clear of any possible manipulations. To remove that process outside the hands of the appointed public officials charged with the duty of expending such funds, would be to infringe the rights of the public. It is clear to this Court that by implementing a procedure whereby the general contractor decides which subcontractor is to receive the work, denies the public their right to be assured that the work is awarded free of personal interest, bias, and prejudice. Furthermore, the Separation Act was intended to protect the materialmen who ... would become subject to the whim of a dishonest or incompetent general contractor; not only in the procedures the general contractor adopted for the award of work, but also for payment of work done. Regardless of whatever bond would be supplied by a general contractor under the proposed procedure, materialmen and subcontractors need the protection guaranteed by the involvement of responsible public officials.

*SEPTA*, 654 A.2d at 121. The Court opined that the interest the Separations Act seeks to protect is the prevention of possible harms to subcontractors and materialmen on individual contracts for public buildings. In addition to recognizing the interest in keeping the contract-award process open in order to protect the interests of taxpayers, the Court stated that it believed "that the legislative purpose [of the Separations Act] was ... to protect the plumbing, heating, ventilating and electrical contractors from the potential of dealing with unscrupulous general contractors." *SEPTA*, 654 A.2d at 122.

Philips primarily asserts that the trial court took the wrong tack in approaching the petition for preliminary injunctive relief by analyzing the pleadings and evidence from the perspective of disappointed bidder law. Philips suggests that this case is not a disappointed bidder case, arguing that the manner in which the Authority sought bids—that is, by seeking a single prime contractor instead of separate contractors as purportedly required by the Separations Act—essentially precluded Philips from bidding on the contract.

Based upon this view, Philips argues that it has standing because it works solely as a public contractor and (1) its business is based upon being a prime electrical contractor (rather than as a subcontractor to a prime) and any bid would be rejected as non-responsive on that ground, (2) if other public entities proceed as the Authority has done, Philips would have no work, and (3) seeking to compel compliance with the Separations Act is the only feasible method of obtaining relief. Philips contends that the trial court's reliance upon this Court's decision in *C.O. Falter* to conclude that Philips lacks standing is misplaced. We agree, because *C.O. Falter* is a disappointed bidder case that did not arise under the Separations Act.[5]

---

4. Op. at 655–56, No. G.D. 88–01957 (Allegheny C.C.P.), *aff'd*, 121 Pa.Cmwlth. 210, 550 A.2d 599 (1988), *allocatur den.*, 525 Pa. 607, 575 A.2d 571 (1990).

5. In *C.O. Falter*, the appellant was a disappointed bidder on a construction contract for the wastewater treatment plant for the Borough of Towanda. The appellant filed a complaint in equity, seeking mandamus and injunctive relief to restrain the Borough's

■ Unlike the situation in disappointed bidder cases, in this case there is no reason to believe that a taxpayer would have an interest in seeking to promote this discrete statutory goal of protecting subcontractors, and we agree with Philips that the disappointed bidder standing requirements are not applicable in a case arising under the Separations Act. Rather, we conclude that the Separations Act itself provides Philips with standing in this case. Philips has a substantial interest in the contract the Authority seeks to award because the contract calls for the exact type of work that Philips does in its business. This interest exceeds that of all citizens in procuring obedience to the law. *Finn*, 990 A.2d at 103. Philips has a direct interest in the litigation, because if the Authority had complied with the Separations Act, Philips could be a successful bidder on the electrical work. This factor supports the conclusion that there is a causal connection between the asserted violation of the Separations Act and the harm Philips alleges. *Id.* Finally, Philips's interest is immediate and not a remote consequence of the action it is seeking to challenge, because if it does not obtain relief it will lose an opportunity to bid on the electrical component of the project. The causal connection is neither remote nor speculative. *Id.* Philips, therefore, has established that it has standing under the Separations Act to challenge the Authority's attempt to circumvent the Separations Act.

■ Having concluded that Philips has standing in this case, we must proceed to consider whether the trial court erred in its analysis regarding Philips's request for a preliminary injunction. A party seeking prohibitory preliminary injunctive relief must demonstrate the following: (1) that injunctive relief is necessary to prevent immediate and irreparable harm not compensable by damages; (2) greater injury will result from denying such relief than from granting it; (3) relief will restore the parties to the positions they held before the allegedly wrongful conduct; (4) that the activity the party seeks to restrain is actionable and there is a likelihood of prevailing on the merits; (5) the injunction is suited to the activity; and (6) the grant of an injunction will not harm the public interest. *Greater Nanticoke Area Educ. Ass'n v. Greater Nanticoke Area Sch. Dist.*, 938 A.2d 1177 (Pa.Cmwlth.2007).[6]

■ With regard to the first prong, the trial court concluded that Philips failed to establish irreparable harm. Our Supreme Court's decision in *Pennsylvania Public Utility Commission v. Israel*, 356 Pa. 400, 52 A.2d 317 (1947), stands for the proposition that a party need not establish irreparable harm when a statute sets forth specific conduct that is unlawful. In that case, the Court confirmed the proposition that "[w]hen the Legislature declares certain conduct to be unlawful it is tanta-

award of the contract to the successful bidder and to compel the Borough to award the appellant with the contract. In sustaining the Borough's preliminary objections to the complaint, the trial court in that case concluded that the appellant was not a taxpayer in the Borough and, therefore, lacked standing. The trial court also concluded that the appellant failed to exhaust its administrative remedies. This Court affirmed the trial court, noting that if the court regarded the disappointed bidder apart from its status as a disappointed bidder (as only a state and federal, but not

local taxpayer), it lacked a direct, immediate, and substantial interest and causal connection necessary to provide standing. *C.O. Falter*, 614 A.2d at 331.

6. On the other hand, a party seeking mandatory injunctive relief must demonstrate that he is entitled to immediate relief and that he will suffer irreparable injury if the court does not grant the relief. *Lewistown Police Ass'n v. Mifflin County Reg'l Police Dep't*, 661 A.2d 508, 510 n. 11 (Pa.Cmwlth.1995).

mount in law to calling it injurious to the public. For one to continue such unlawful conduct constitutes irreparable injury." *Id.*, 356 Pa. at 406, 52 A.2d at 321.[7] We conclude that Philips has established that the Authority's violation of the Separations Act (in failing to request separate bids on the electrical work) resulted in irreparable harm.

■ As to the last element necessary for the grant of a preliminary injunction, the trial court similarly concluded that Philips failed to establish that the granting of such relief will not harm the public interest. As noted above, this Court's standard of review of a trial court's order denying a preliminary injunction is very limited. We may only reverse a trial court when we conclude that the trial court lacked any reasonable grounds for its factual findings or that the trial court engaged in a "palpably" erroneous application of the law. *Roberts v. Bd. of Dirs. of Sch. Dist. of the City of Scranton*, 462 Pa. 464, 469, 341 A.2d 475, 478 (1975).

As indicated above, there is a strong public interest in ensuring that municipalities and municipal authorities comply with the Separations Act. Nevertheless, in addressing the public harm issue, the trial court determined that an emergent situation existed with respect to the needed repair work for the pump stations. The trial court considered the record evidence indicating that the Authority recently had to engage in repairs of one of the pumps and that the Authority anticipated potential malfunctions that could cause significant harm to the public water system and natural waterways. The record, therefore, contains evidence that supports the trial court's findings regarding potential public harm, and we cannot intrude on the trial court's findings and ultimate decision, because the evidence provided the trial court with reasonable grounds to conclude that delay in the award of the contract would result in harm to the public interest.[8]

In summary, we conclude that the trial court erred in concluding that Philips lacked standing to bring its petition for preliminary injunction and that the trial court also erred in concluding that Philips had not established irreparable harm. We cannot, however, reverse the trial court's decision, because the trial court had reasonable grounds to conclude that granting the preliminary injunction would harm the public interest. Accordingly, we affirm the order of the trial court denying Philips's request for a preliminary injunction.

### ORDER

AND NOW, this 1st day of July, 2010, the order of the Court of Common Pleas of Chester County is AFFIRMED.

---

7. Additionally, this Court, in a single-judge opinion, cited *Israel* in its decision in *Council 13, American Federation of State, County and Municipal Employees v. Casey*, 141 Pa. Cmwlth. 199, 595 A.2d 670 (1991), in concluding that a party had demonstrated that it would suffer irreparable harm where it established that the Governor of Pennsylvania, by refusing to pay a certain class of employees for services performed, violated a statutory provision that required bi-weekly payment to that class of state employee.

8. We observe, however, that had this Court been the trier of fact, it might have viewed the evidence differently and concluded that the evidence only suggested that there was the *potential* for harm, as compared to *actual* harm, to the public interest. We also note that the public interest is served when local government agencies follow the laws of this Commonwealth.