# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

R.S. a minor, by his parents and    :
natural Guardians, R.S. and A.S.    :
    :
    v.    :    No. 1280 C.D. 2020
    :    Submitted: October 18, 2021
Hempfield Area School District,    :
    Appellant    :


BEFORE:  HONORABLE P. KEVIN BROBSON, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge


OPINION BY
PRESIDENT JUDGE BROBSON          FILED: December 3, 2021


Hempfield Area School District (Hempfield) appeals from an order of the Court of Common Pleas of Westmoreland County (trial court), dated November 3, 2020, which granted an emergency motion for special and/or emergency preliminary injunctive relief filed on behalf of R.S. (R.S.), a minor, by his parents and natural guardians, R.S. (R.S.'s father) and A.S. For the reasons set forth below, we reverse the order of the trial court.

On October 5, 2020, R.S. initiated this action by filing a complaint, seeking a declaratory judgment that R.S. could attend in-person instruction at Hempfield and a preliminary injunction to enjoin Hempfield from treating R.S.'s enrollment at Hempfield different from other regular education students. (Original Record (O.R.), Item No. 2.) In the complaint, R.S. averred that Hempfield sought to deny R.S. in-person instruction and place R.S. in a remote cyber-learning program based on his previous expulsion from Greater Latrobe School District (Latrobe) as a result of

a weapons violation. *See* Section 1317.2 of the Public School Code of 1949 (School Code).[1] (*Id*. at 4-5.) While admitting that a weapons violation would permit Hempfield to arrange for alternate education services for a transferring student, R.S. alleged that he had no weapons violation on his record. (*Id*. at 5.) R.S. asserted that Latrobe initially charged him with a weapons violation, but the charge was ultimately withdrawn. (*Id*.) Thus, R.S. insisted that Hempfield had no basis under the law to deny R.S. in-person instruction. (*Id*.) Based on these facts, R.S. requested declaratory and injunctive relief to permit R.S. to attend in-person instruction at Hempfield like other regular education students. (*Id*.)

Thereafter, R.S. filed an emergency motion for special and/or emergency preliminary injunctive relief, again alleging that Hempfield had no basis under the law to prevent R.S. from attending in-person instruction at Hempfield. (Supplemental Original Record (S.O.R.) at 3.) R.S. asserted that "[e]quity will grant a preliminary injunction if the petitioner's right to relief is clear, the need for relief is immediate, and the injury will be irreparable if the injunction is not granted," and that the violation of a statute constitutes irreparable harm *per se*. (*Id*. at 4 (quoting *City of Phila. v. Commonwealth*, 922 A.2d 1, 9 (Pa. Cmwlth. 2003).) R.S. maintained that an injunction was necessary to accord R.S. his statutory right to the

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, added by Section 4 of the Act of June 30, 1995, P.L. 220, 24 P.S. § 13-1317.2. Section 1317.2 of the School Code provides, in pertinent part:

(a) Except as otherwise provided in this section, a school district or area career and technical school shall expel, for a period of not less than one year, any student who is determined to have brought onto or is in possession of a weapon on any school property, any school-sponsored activity or any public conveyance providing transportation to a school or school-sponsored activity.

(b) Every school district and area career and technical school shall develop a written policy regarding expulsions for possession of a weapon as required under this section. Expulsions shall be conducted pursuant to all applicable regulations.

2

same education as other students at Hempfield, that courts "properly interfere when a school [district] acts outside of its statutory authority," and that R.S.'s right to relief was clear. (*Id*. at 2-3.)

Hempfield filed a response in which it asserted that R.S. participated in a full disciplinary hearing, at which the Board of School Directors of Latrobe (Latrobe School Board) found him to have violated the Latrobe weapons policy and Section 1317.2(a) of the School Code. (*See* O.R., Item No. 3 at 2.) Hempfield essentially argued that the weapons charge was not withdrawn, and, therefore, Hempfield had authority under Section 1317.2(e.1) of the School Code to provide alternate education services to R.S. (*Id*.) In the alternative, Hempfield contended that Section 1317.2(e) of the School Code permits Hempfield to deny R.S. in-person instruction even without a weapons charge on R.S.'s record. (*Id*.) Hempfield essentially asserted that it would run counter to the legislative intent of these provisions of the School Code to deny it authority to provide for alternate education services to R.S. (*Id*. at 3-4.)

The trial court conducted a hearing on October 16, 2020. (Reproduced Record (R.R.) at 50.) At the hearing, R.S.'s father testified that R.S. was a student at Latrobe when he was subject to a student disciplinary hearing based on an incident involving an alleged weapon. (R.R. at 57-58.) The disciplinary hearing resulted in R.S.'s expulsion from Latrobe based on a violation of Latrobe's weapons policy and Section 1317.2 of the School Code. (*See id.* at 57.) R.S.'s father stated that R.S. appealed the disciplinary ruling to the trial court, but, prior to any determination on the appeal, R.S. and Latrobe reached a settlement. (*Id*.) R.S.'s father understood the settlement agreement to provide that the weapons violation was withdrawn from R.S.'s record entirely. (*Id*. at 58.) R.S.'s father testified that he was entering into a

3

sales agreement to purchase a home in the geographic location of Hempfield to establish residency so R.S. could attend Hempfield.[2] (*See id*.) He stated that it was his understanding that Hempfield could only prevent R.S. from attending in-person instruction if R.S. had a weapons charge on his record, but the weapons charge was withdrawn. (*Id*.) Nevertheless, R.S.'s father stated that Hempfield was still seeking to enroll R.S. in its remote cyber-learning program. (*Id*.)

Ned Nakles (Nakles), the solicitor for Latrobe, also gave testimony regarding the circumstances surrounding R.S.'s disciplinary hearing and expulsion. Nakles testified that R.S. participated in a disciplinary hearing in February of 2020, after which the Latrobe School Board issued an adjudication finding R.S. guilty of approximately 11 charges, including a weapons violation.[3] (R.R. at 60.) Nakles stated that he was involved in the development and execution of the settlement agreement, which withdrew the weapons violation from the disciplinary adjudication. (*Id*.) Nakles noted that during the negotiation of the settlement agreement, Latrobe was aware of precedent from this Court holding that a pencil was not a weapon, and, because R.S. maintained in his appeal of the disciplinary adjudication that the item involved that led to the weapons charge was similar to a pencil, Latrobe agreed to drop the weapons violation in exchange for R.S. withdrawing the appeal of his expulsion. (*See id*. at 61.) Nakles averred, however, that none of the other charges or the term of R.S.'s expulsion was amended by the settlement agreement. (*Id*.) Nakles further insisted that Latrobe continued to take

---

[2] Section 1302(a) of the School Code, 24 P.S. § 13-1302(a), provides that a "child shall be considered a resident of the school district in which his parents or the guardian of his person resides . . . ."

[3] The other violations Nakles identified were hazing, bullying, simple assault, cyber bullying, failure to comply with state and local laws, and not being aware of rules and regulations and the student handbook. (R.R. at 60.)

the position that the item was a weapon, but Latrobe, nonetheless, agreed to withdraw the weapons violation. (*Id.*)

At the conclusion of the hearing, the trial court issued an order that R.S. would be enrolled in Hempfield's alternate cyber-learning program pending further decision by the trial court, and it directed the parties to file written briefs in support of their positions within ten days. (R.R. at 63; O.R., Item No. 4.) By opinion and order, dated November 3, 2020, the trial court granted R.S.'s motion for preliminary injunctive relief and directed that "Hempfield shall immediately permit R.S. the opportunity to participate in classes in a manner no different than any other Hempfield regular education student."[4] (O.R., Item Nos. 10-11.) The opinion recognized that Section 1317.2(e.1) of the School Code permits a school district receiving a student who was expelled for a weapons violation to assign the student to alternate education services. (O.R., Item No. 10 at 3.) The trial court observed, however, that based on the withdrawal of the weapons violation in the settlement agreement, "Latrobe took the matter outside of [Section 1317.2 of the School Code] . . . ." (*Id.*) The trial court reasoned that it had "no legal basis to alter or revisit Latrobe's determination on the matter," and the trial court's determination was, thus, limited to what was set forth in the settlement agreement. (*Id.*) Construing the plain language of Section 1317.2, the trial court noted that "courts 'should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.'" (*Id.* at 4 (quoting *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 822 (Pa. 2013)).) Relying in particular on the provision's title—*i.e.*, "Possession of weapons prohibited,"—the trial court then concluded that the

---

[4] The order was contingent on R.S. meeting all residency requirements set forth by Hempfield. (O.R., Item No. 11.)

5

legislative intent was clear that Section 1317.2 "only come[s] into play when there is a determination that the student was in possession of a weapon." (*Id*.) The trial court, therefore, rejected Hempfield's alternative argument that it could rely on Section 1317.2(e) of the School Code to deny R.S. in-person instruction based on his expulsion alone. (*Id*.) As it concerns authority outside of Section 1317.2, the trial court noted that the provisions and authority cited by Hempfield in its brief did not otherwise empower Hempfield to deny in-person instruction based on his expulsion or the withdrawn weapons violation.[5] (*Id*. at 4-5.) The trial court, thus, concluded:

> Since Hempfield's placement of R.S. [in the cyber-learning program] is not supported by legal authority, [and] the lack of access to a full, in-person education does constitute immediate and irreparable harm to R.S.[,] . . . a preliminary injunction is warranted to enjoin Hempfield from requiring that R.S. be placed in [c]yber [s]chool or any other [alternate] education arrangement.

(*Id*. at 5.) On November 25, 2020, Hempfield filed a notice of appeal with the trial court.

---

[5] In support of its argument concerning authority outside Section 1317.2 of the School Code, Hempfield further cited: the Basic Education Circular generated by the Pennsylvania Department of Education concerning sharing documentation between schools including disciplinary records, *see* https://www.education.pa.gov/Policy-Funding/BECS/Purdons/Pages/EnrollmentStudents.aspx (last visited December 2, 2021); Section 1302-A of the School Code, added by the Act of June 30, 1995, P.L. 220, 24 P.S. § 13-1302-A (establishing Office for Safe Schools to coordinate efforts for student safety); Section 1304-A of the School Code, added by the Act of June 30, 1995, P.L. 220, 24 P.S. § 13-1304-A (concerning sworn statements prior to admission at new school regarding expulsion or suspension for weapons, alcohol or drugs or for willful infliction of injury or acts of violence); Section 1305-A of the School Code, added by the Act of June 30, 1995, P.L. 220, 24 P.S. § 13-1305-A (concerning transfer of disciplinary records upon school transfer); and Pennsylvania Senate Bill 530, Session of 2019, which proposes adding a new provision similar to Section 1317.2 but relating to sexual assault adjudications. (O.R., Item No. 8.)

On appeal,[6] Hempfield essentially contends that the trial court erred in concluding that: (1) Hempfield is bound by the terms of the settlement agreement, (2) Hempfield cannot rely on the evidentiary determinations of the Latrobe School Board to establish that R.S.'s conduct violated Section 1317.2 of the School Code, and (3) the other provisions of the School Code do not provide Hempfield the authority to otherwise deny in-person instruction to R.S. based on his expulsion or withdrawn weapons violation. Thus, it appears as if Hempfield is challenging the merits of this matter in relation to *permanent* injunctive relief as opposed to whether the trial court erred in granting *preliminary* injunctive relief. Because Hempfield is appealing the trial court's grant of preliminary injunctive relief, we must consider whether the trial court erred in its analysis regarding the grant of a preliminary injunction.

A party seeking prohibitory preliminary injunctive relief must demonstrate the following six essential prerequisites: (1) injunctive relief is necessary to prevent immediate and irreparable harm not compensable by damages; (2) greater injury will result from denying such relief than from granting it; (3) relief will restore the parties to the positions they held before the allegedly wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the

---

[6] In analyzing an appeal from a trial court's grant of preliminary injunctive relief, we review the trial court's order for an abuse of discretion. *SEIU Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 501 (Pa. 2014). This standard of review is highly deferential in that it prohibits this Court from inquiring into the merits of the controversy. *Id.* Rather, we review a trial court's order to determine whether the trial court had any reasonable grounds for its conclusions. *Philips Bros. Elec. Contractors, Inc. v. Valley Forge Sewer Auth.*, 999 A.2d 652, 655 n.2 (Pa. Cmwlth. 2010); *Hatfield Twp. v. Lexon Ins. Co.*, 15 A.3d 547, 551 (Pa. Cmwlth. 2011). "The only circumstances warranting a reversal of a trial court's decision granting or denying a preliminary injunction are when it is clear 'that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied.'" *Hatfield Twp.*, 15 A.3d at 551 (quoting *Mazzie v. Commonwealth*, 432 A.2d 985, 988 (Pa. 1981)).

7

merits; (5) the injunction is suited to the activity; and (6) the grant of an injunction will not harm the public interest.[7] *SEIU Healthcare*, 104 A.3d at 501-02; *Philips Bros.*, 999 A.2d at 657. Based on the foregoing, we interpret Hempfield as essentially challenging the fourth factor set forth above—*i.e.*, that R.S. has a clear right to relief and is likely to prevail on the merits. Thus, based on our standard of review, we will consider whether the trial court had any reasonable grounds for its determination that there is "no legal basis to alter or revisit Latrobe's determination on the matter." (O.R., Item No. 10 at 3.); *Philips Bros.*, 999 A.2d at 655 n.2.

After careful review of the entire record in this matter, we conclude that the trial court erred in granting preliminary injunctive relief because the record does not contain sufficient evidence to support a conclusion that R.S. has a likelihood of succeeding on the merits. As a result, the trial court lacked a reasonable basis for the granting of preliminary injunctive relief.

As noted previously, Section 1317.2(a) of the School Code provides that "a school district . . . *shall* expel, for a period of not less than one year," any student who is found to be in possession of a weapon on school property. (Emphasis added.) Thus, under this provision, Latrobe had a *mandatory duty* to expel R.S. for a period of one year if he was found to be in possession of a weapon on school property. Here, there is no record basis for the conclusion that the settlement agreement between Latrobe and R.S. preempts or has primacy over the adjudication of the Latrobe School Board that appears not to have been set aside, vacated, superseded, or reversed.

---

[7] Prohibitory injunctive relief restrains a party from acting, while mandatory injunctive relief commands the performance of an affirmative act. *See Mazzie*, 432 A.2d at 988; *Hatfield Twp.*, 15 A.3d at 551. Because the trial court's order restrained Hempfield from enrolling R.S. in its cyber-learning program, the injunction here was prohibitory in nature.

At present, it appears to this Court that Latrobe charged R.S. with a weapons violation and prosecuted the charge at a disciplinary hearing before the Latrobe School Board. (R.R. at 57; O.R., Plaintiffs' Exhibit No. 1 at 3.) It further appears that the Latrobe School Board issued an adjudication expelling R.S. based on a finding that he was in violation of Latrobe's weapons policy and Section 1317.2 of the School Code, but the adjudication is not in the record. (*See id*.) Moreover, assuming that such an adjudication exists, there is no testimony or other evidence of record to establish that the adjudication was properly set aside, such that there is no adjudication of a weapons violation pursuant to Section 1317.2(a) on R.S.'s record. While R.S. and Latrobe sought to circumvent the disciplinary adjudication by means of the settlement agreement, R.S. and Latrobe cannot agree to strike an adjudication issued by the Latrobe School Board. Stated differently, at the disciplinary hearing Latrobe was acting in a prosecutorial function and the Latrobe School Board was the adjudicator. Latrobe lacked authority to thereafter unilaterally nullify the adjudication issued by the Latrobe School Board. If R.S. and Latrobe wanted the adjudicated weapons violation to be removed from R.S.'s record, R.S. could have pursued an appeal to its conclusion or the parties could have attempted to have the adjudication modified or vacated by the Latrobe School Board. The record does not establish that either process was effectuated, and, thus, the adjudication would still be controlling in this matter.

Hempfield agreed to provide R.S. with alternate education services, as opposed to in-person instruction based on Section 1317.2(e.1) of the School Code, 24 P.S. § 13-1317.2(e.1), which provides:

> A school district receiving a student who transfers from a public or private school during a period of expulsion for an act or offense involving a weapon may assign that student to an [alternate] assignment

9

or provide [alternate] education services, provided that the assignment may not exceed the period of expulsion.

This provision clearly empowers a school district to provide for alternate education services if a transferring student is expelled for a weapons violation. Given that the record does not establish that R.S.'s weapons violation pursuant to Section 1317.2(a) of the School Code and Latrobe's weapons policy was ever properly vacated or struck from R.S.'s record, we cannot agree with the trial court that Hempfield had "no legal authority" to prevent R.S. from attending in-person instruction. (O.R., Item No. 10 at 3.) Rather, it appears from the limited record on appeal that Hempfield had the legal authority to take the actions it took.

Based on the foregoing, we conclude that the trial court lacked reasonable grounds upon which to conclude that R.S. had a likelihood of succeeding on the merits. *See SEIU Healthcare*, 104 A.3d at 501-08; *Philips Bros.*, 999 A.2d at 655 n.2. Accordingly, the order of the trial court is reversed.

_____
P. KEVIN BROBSON, President Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

R.S. a minor, by his parents and     :
natural Guardians, R.S. and A.S.     :
    :
          v.     :   No. 1280 C.D. 2020
    :
Hempfield Area School District,     :
                 Appellant     :

# O R D E R

AND NOW, this 3rd day of December, 2021, the order of the Court of Common Pleas of Westmoreland County, dated November 3, 2020, is REVERSED.

_____
P. KEVIN BROBSON, President Judge